A03A2581. RUST v. THE STATE.
A03A2582. ROWE v. THE STATE.
(592 SE2d 525)

BLACKBURN, Presiding Judge.

Following a joint jury trial, Edward Shane Rust and Donnie Russell Rowe were both convicted of two counts of armed robbery and Rowe was also convicted of two counts of aggravated assault. Rust's and Rowe's separate appeals are now consolidated for review. Rust contends that the trial court erred (1) by admitting evidence of an earlier armed robbery; (2) abused its discretion in denying his motion to sever and by not allowing him to use certain demonstrative evidence during closing argument; and (3) by denying his motion for new trial. Rowe likewise contends that the trial court erred (1) by admitting evidence of the earlier armed robbery and (2) by denying his motion for mistrial when he was deprived of his constitutional right to cross-examine an investigator. For the reasons set forth below, we affirm in both cases.

On appeal, the evidence must be viewed in a light most favorable to the verdicts, and Rust and Rowe no longer enjoy the presumption of innocence. *Pollard v. State*.[1] In addition, the evidence cannot be

---

[1] *Pollard v. State*, 230 Ga. App. 159 (495 SE2d 629) (1998).

reweighed or witness credibility reassessed. *Walters v. State.*[2] So considered, the evidence shows that sometime after midnight on October 31, 2001, James Ferrio stopped at a rest area located at I-75S in Monroe County, where he was accosted at gunpoint by a white male wearing a camouflage jacket, jeans, and a baseball cap. Ferrio testified that the man had short or shaved hair and a wispy mustache and goatee. He described his assailant as "upwards of six feet" in height and "quite a bit heavier than me too." The gun was a loaded, dark steel revolver. The gunman announced, "This is a robbery, let's go for a walk." Ferrio gave the gunman his emergency reserve funds, two $20 bills that were "very tightly folded and crisp . . . packed right behind the credit cards and driver's license" that had been folded in half and then quartered. At trial, Ferrio recognized Exhibits 20A and 20B as bills creased and "folded in the identical manner that I kept my two [$20] bills."

After Ferrio surrendered his money, the robber forced him to walk toward his car where he rummaged through the vehicle's console. When the gunman ordered Ferrio to get in the car, Ferrio did so but then immediately locked the doors and drove off. Despite the robber's threats to shoot him if he did not stop, Ferrio "decided my odds were better leaving." While fleeing, Ferrio noticed a car "that was suspiciously parked." He testified that "[m]ost cars are parked at an angle to the curb. This one was on the opposite side of the building and it was parked parallel to the curb as if they'd parked there suddenly and they wanted . . . a fast exit. It was running at that time. No lights were on." In his rearview mirror, Ferrio watched the gunman approach that car which after coasting had come to a stop. Ferrio described the car as a late 1980s, early 1990s, two-door Lincoln Continental, a dark brown or burgundy. In court, Ferrio identified the defendants' vehicle from photographs. Ferrio testified that the vehicle had caught his attention because "it was parked in an irregular manner and [was] running."

After the armed robbery, Ferrio called 911 on his cell phone, then drove to the next exit south on I-75 located in Bibb County where he met with deputies from both the Monroe County and Bibb County Sheriff's Departments. Since the armed robbery had occurred in Monroe County, the Bibb County officers deferred to that jurisdiction. Even so, Bibb County Deputy William Ferrell, who had met Ferrio at the Shell station, broadcast a radio lookout for the vehicle that Ferrio had described to him. Bibb County Deputy George Meadows also began looking in the area for "possibly two individuals in a red Lincoln, two door."

---

[2] *Walters v. State*, 244 Ga. App. 657, 658 (538 SE2d 451) (2000).

Ferrio accompanied deputies from Monroe County back to the rest area where investigators were already questioning a man as a possible suspect. Ferrio told the officers that this person was not the gunman. He described the robber as a white male wearing a camouflage jacket and a baseball cap, a little over six feet tall, approximately 200 pounds with short or shaved hair and some facial hair. The Monroe County Sheriff's Department broadcast details of the armed robbery and the description of the "burgundy Lincoln."

Just over an hour later, another armed robbery occurred farther down I-75 at the Super 8 Motel on Arkwright Road in Bibb County. This motel is approximately 10.2 miles south of the rest stop in Monroe County. A white male had entered the Super 8 Motel and tried to get a key to room 214. The clerk on duty refused to give him a key because he was not registered to that room. A surveillance camera recorded the man as he proceeded down the corridors of the motel looking into the peep holes of various rooms. Greg Anderson and Kyle Vandergrifs, crew members of Stimal Communications, an out-of-state cell phone tower company, were staying in room 220. Between 1:15 and 1:30 a.m., when a man pounded on their door, announcing, "room service," Anderson cracked the door slightly, leaving the security latch attached. A white male described as tall and slender with greasy blond hair and wearing a camouflage jacket forced the door open, damaging the door frame and hasp, and after a brief struggle, entered the room, pointing a pistol at Anderson. At gunpoint, he ordered Anderson to awaken his co-worker. The gunman, later identified as Rowe, threatened to shoot them if they made any noise. At one point, he held the gun to Vandergrifs's head and threatened to "kill both of us." When Vandergrifs surrendered all his cash, Rowe "told me he should kill me for only having three dollars." After cutting the phone wire, Rowe took Vandergrifs's wallet and lighter and Anderson's money, credit cards, driver's license, watch, and company credit card, then fired a single shot into the headboard just inches from Anderson's head.

Using his cell phone, Anderson called 911. When officers arrived, Anderson and Vandergrifs told them what happened, described the robber, and listed the items stolen from them at gunpoint. Shortly thereafter, Deputy Meadows from Bibb County, heard the radio report of the armed robbery at the Super 8 Motel and the description of the assailant wearing a camouflage jacket and ball cap and brandishing a handgun. Noticing the obvious similarities to the earlier armed robbery that had transpired nearby, Meadows suspected the involvement of the same perpetrators. Another Bibb County deputy, Ferrell, testified that when he heard the description of the suspect in the Super 8 Motel armed robbery, "I advised the rest of the units in the county that it sounded like the same suspect from Monroe

County and I also again gave the lookout on the vehicle that the Monroe County victim had given us."

Meanwhile, Meadows waited on the highway watching for a dark-colored, two-door Lincoln Continental operated by a white male. Bibb County Sheriff's Deputy James McDuffy said that while on patrol, he, too, was looking for the Lincoln even before the report of the second armed robbery. When Meadows spotted a Lincoln Continental traveling south on I-75 that corresponded with Ferrio's description of the car, he began following it. Meadows waited for McDuffy, his backup, to arrive before pulling the Lincoln over. When stopped, Rust was driving the Lincoln and his co-defendant, Rowe, was his passenger. Inside the Lincoln, officers found the camouflage jacket, ball cap, Anderson's American Express credit card issued to Stimal Communications, his employer, Anderson's watch, and two folded $20 bills in the pocket of the camouflage jacket. The two $20 bills were folded in half and then quartered as Ferrio had described his bills. Investigators determined that the tag placed on the Lincoln was stolen. In addition, Vandergrifs recognized a black Zippo lighter also found in the Lincoln as property stolen from him.

The State presented evidence to show that Rust committed the Monroe County robbery while wearing the camouflage jacket and ball cap and then left in the Lincoln with his co-defendant, Rowe, driving. Then, while Rust waited in the car, Rowe had donned the camouflage jacket and cap and robbed Anderson and Vandergrifs at the motel in Bibb County. Ferrio testified that the Lincoln Continental that Rust was driving when the suspects were apprehended appeared to be the same car that he had seen at the rest area. Anderson and Vandergrifs identified Rowe as the man who robbed them at gunpoint and fired the revolver. Anderson identified the Wrangler watch found in the getaway car as a gift from his brother. Although Ferrio was unable to identify Rust as the gunman who accosted him at the rest area in Monroe County, his description seemed to match Rust's general physical appearance. As to whether the folded currency could have belonged to Anderson as the defense theorized, Anderson disputed that, testifying, "I didn't have them folded like that." Investigators never found any gun but did discover some .32 caliber bullets hidden in the rear seat armrest of the Lincoln. When investigators dug the spent bullet from the wall behind the headboard, they recovered the top of a spent .32 caliber round. Based on the evidence adduced at trial, the jury convicted Rust and Rowe of two counts of armed robbery. The jury also found Rowe guilty of two counts of aggravated assault.

## Case No. A03A2581

1. Rust contends that the trial court erred in admitting evidence relating to the Monroe County incident as part of the res gestae.

At the pretrial motion hearing, the trial court voiced uncertainty about admitting the Monroe County incident as similar transaction evidence but ultimately decided to admit the evidence as part of the res gestae. Before the presentation of evidence, and during its final charge, the trial court gave limiting instructions restricting the jury's use of this evidence.

Evidence of the commission of additional crimes may be admissible "as part of one crime spree and as evidence of [a defendant's] bent of mind and of the circumstances of his arrest." (Punctuation omitted.) *Beasley v. State.*[3] Here, the robbery in Monroe County formed part of a crime spree that crossed county lines and was properly admitted as part of a single, continuous transaction. See *Herndon v. State.*[4] The events in Monroe County and the armed robbery in Bibb County were separated only by approximately an hour and by only a distance of ten miles farther south on I-75. Moreover, the events in Monroe County explained the circumstances that led to the arrest and the interception of the vehicle in which Rust and Rowe were traveling. See *Beasley*, supra. In addition, since Rust was indicted as a party to the crimes committed in Bibb County, evidence of the Monroe County robbery was essential to show that Rust had knowledge of the crimes that spanned two counties and to establish Rust's intent and state of mind concerning the Bibb County crimes. See *Crosby v. State.*[5] Because the Monroe County armed robbery was part of a crime spree that crossed county lines, was closely linked in time and location to the Bibb County crimes, and established the circumstances of Rust's arrest for the indicted offenses, the trial court did not err in admitting the evidence as res gestae of the indicted offenses. See *Fortson v. State.*[6] Therefore, we cannot say that the admission of this evidence was clearly erroneous. See *Baird v. State.*[7]

2. Rust contends that the trial court abused its discretion by denying his motion to sever. He claims that the joint trial resulted in confusion of the evidence and law because he was entitled to jury charges on mere presence and circumstantial evidence and Rowe was not. Rust asserts that the overwhelming evidence that incriminated Rowe "spilled over" onto him so that he was convicted by "mere asso-

---

[3] *Beasley v. State*, 269 Ga. 620, 623 (4) (502 SE2d 235) (1998).
[4] *Herndon v. State*, 253 Ga. App. 543, 546 (559 SE2d 749) (2002).
[5] *Crosby v. State*, 259 Ga. 822, 823 (2) (389 SE2d 207) (1990).
[6] *Fortson v. State*, 242 Ga. App. 304, 305-306 (2) (529 SE2d 429) (2000).
[7] *Baird v. State*, 207 Ga. App. 44 (427 SE2d 37) (1993).

ciation." He argues that the jury could not effectively separate the overwhelming evidence against Rowe from the minimal evidence against him.

A party requesting severance has the burden of making a clear showing of prejudice and a denial of due process in the absence of severance. *Whitehead v. State.*[8] In the absence of a showing that a defendant will be prejudiced by a joint trial, the trial court's denial of a severance motion will not be disturbed. *Green v. State.*[9] In satisfying this burden, a defendant must do more than simply assert that he would have a better chance of acquittal if he were tried separately. *Satterfield v. State.*[10] When exercising its discretion in deciding a motion to sever, the trial court should consider: (1) whether the number of defendants will create confusion of the evidence and the law applicable to each defendant; (2) whether a danger exists that evidence admissible against one defendant will be considered against the other, despite cautionary instructions; and (3) whether the defenses are antagonistic. *Whitehead,* supra at 552.

Here, Rust failed to show that the number of defendants created confusion of the evidence or law or that evidence properly considered against Rowe was improperly considered against him. During the polling of the jury, none of the jurors indicated any hesitation or confusion about the law or evidence. While the evidence was clear that Rust never entered the motel room, it was for the jury to decide whether Rust was a party to the armed robbery offenses committed therein. See *Brewton v. State.*[11]

Rust also claims that Rowe's testimony was antagonistic to his defense. He complains that Rowe told "a convoluted story wherein he and the alleged victims met in Atlanta" and agreed to meet "in Macon to effect a drug transaction which fell through." He points out that the jury did not embrace Rowe's version of events about a failed drug deal and disgruntled sellers who sought revenge by concocting false charges.

But, Rowe's testimony did not incriminate Rust. Rowe testified that Rust was asleep while he alone had gone into the motel to conduct the drug deal, and that Rust was still sleeping when he returned to the car. Such testimony was not antagonistic but lent support to Rust's defense that he knew nothing about the armed robbery. See *Davis v. State*[12] (existence of antagonistic defenses alone is not sufficient to warrant the grant of a separate trial, absent a showing of

---

[8] *Whitehead v. State,* 237 Ga. App. 551 (515 SE2d 866) (1999).
[9] *Green v. State,* 274 Ga. 686, 688 (2) (558 SE2d 707) (2002).
[10] *Satterfield v. State,* 256 Ga. 593, 596 (3) (351 SE2d 625) (1987).
[11] *Brewton v. State,* 266 Ga. 160, 161 (2) (465 SE2d 668) (1996).
[12] *Davis v. State,* 266 Ga. 801, 802 (3) (471 SE2d 191) (1996).

harm). Having reviewed the record, we cannot say that the trial court abused its discretion in denying the motion to sever. See *Green*, supra.

3. Rust asserts that the trial court abused its discretion by not allowing certain demonstrative evidence during closing argument. Rust complains that during closing argument, the trial court prevented him from trying on the camouflage jacket seized as evidence. We disagree. During closing, it is permissible to make any argument which can reasonably be supported by evidence adduced at trial. *Wade v. State*[13] (physical precedent only). But Rust did not present any evidence at trial and so could not conduct a demonstration for the jury during closing argument about facts not in evidence. This demonstration should have taken place during trial or not at all. *Williams v. State.*[14]

4. Rust contends that the trial court erred by denying his motion for new trial. He argues that the State failed to prove that he was a party to the crimes in Bibb County or that he had worn the camouflage jacket during the events in Monroe County. Pointing to the obvious disparity in his and Rowe's height and weight, he claims that the jacket entered in evidence "did not fit [him]."

While mere presence at the scene of a crime is not sufficient evidence to support a conviction for being a party to a crime, "presence, companionship, and conduct before and after the offense are circumstances from which one's participation in the criminal intent may be inferred." (Punctuation omitted.) *James v. State.*[15] Viewed in a light most favorable to the verdict, the evidence was sufficient to enable the jury to find Rust guilty beyond a reasonable doubt of being a party to the crimes. Moreover, the jury was able to observe both men during the trial. Whether, in fact, Rust wore the jacket admitted in evidence during the armed robbery in Monroe County and whether he acted in concert in committing the crimes with Rowe in Bibb County were questions for the jury to resolve. See *Brewton*, supra.

## Case No. A03A2582

5. Rowe contends that the trial court erred in admitting "a similar transaction as res gestae evidence when the prior act was not shown to be sufficiently similar or logically connected to the charged offense." Rowe claims that "[o]ther than the fact that money was demanded and taken in both instances, the offenses are not similar." Rowe complains that he was unfairly prejudiced by this evidence.

---

[13] *Wade v. State*, 197 Ga. App. 464, 466 (2) (398 SE2d 728) (1990).
[14] *Williams v. State*, 254 Ga. 508, 511 (330 SE2d 353) (1985).
[15] *James v. State*, 227 Ga. App. 907, 908 (1) (490 SE2d 556) (1997).

However, in both incidents, one man acted as the robber, dressed in the camouflage jacket and ball cap, and brandished a gun to intimidate his victim or victims while the other served as the getaway driver of their car. Rowe and Rust apparently escaped using the same car after both crimes since the burgundy vehicle intercepted by police matched Ferrio's description and contained property stolen at gunpoint from Anderson, Vandergrifs, and Ferrio.

In any event, any error in admitting evidence implicating Rowe in the Monroe County incident would be harmless in light of the overwhelming evidence of Rowe's guilt in committing the Bibb County crimes including Rowe's identification by the two victims as the person who robbed them at gunpoint, and the discovery of the victim's business credit card and his watch in the vehicle shortly after the armed robberies in Bibb County. See *Upshaw v. State*.[16]

6. Rowe asserts that the trial court erred in denying his motion for mistrial because he was denied his right to a thorough and sifting cross-examination of an investigator to whom he provided a custodial statement.

Shortly after his arrest, Rowe gave Investigator Jim Carroll an exculpatory statement, similar to his rambling rendition of events offered at trial. During its case-in-chief, the State opted not to introduce evidence of this statement because it considered the statement as self-serving. When Rowe tried to cross-examine Carroll about the statement, the State objected and the trial court sustained the objection. Rowe then moved for a mistrial. As a general rule, "in a criminal case, 'self-serving declarations made by a defendant are not admissible.'" *Grude v. State*.[17] There was no error.

*Judgments affirmed. Ellington and Phipps, JJ., concur.*

DECIDED DECEMBER 19, 2003.

*W. Lee Robinson*, for appellant (case no. A03A2581).

*Adams, Hemingway & Wilson, Scott C. Huggins*, for appellant (case no. A03A2582).

*Howard Z. Simms, District Attorney, Sandra G. Matson, Dorothy A. Vinson, Assistant District Attorneys*, for appellee.

---

[16] *Upshaw v. State*, 257 Ga. App. 199, 201 (3) (570 SE2d 640) (2002).
[17] *Grude v. State*, 189 Ga. App. 901, 903 (2) (377 SE2d 731) (1989).