## A04A2371. HOUSTON v. THE STATE.
### (606 SE2d 883)

JOHNSON, Presiding Judge.

A jury found Kara Houston guilty of aggravated assault and robbery. Houston appeals, alleging the trial court erred in admitting similar transaction evidence and in allowing a detective to read the statement of a witness to the jury. We find no harmful error and affirm Houston's convictions.

Viewed in a light most favorable to support the jury's verdict, the evidence shows that on January 2, 2002, Quanitis Reese was working as a cashier at the drive-through window of a Mrs. Winner's restaurant on Candler Road. A woman, whom Reese positively identified as Houston, came to the drive-through window in a blue, four-door car and ordered a milk. Houston got out of her car and approached the window to pay for her milk. When Reese opened the window to give Houston her change, Houston said, "Give me the drawer or I'll kill you" and she put her hand in her pocket as if she had a gun. Afraid she was going to be shot, Reese gave the cash drawer to Houston. The drawer contained paper money and change.

Reese's manager was able to see a tag number on Houston's car, and Reese identified a green army jacket and winter cap with little balls on the top as the coat and cap worn by the robber. The coat and cap belonged to Houston. The pocket of the coat contained a roll of coins like the ones kept in the cash drawer at Mrs. Winner's.

The next day, Veronica Richardson was working as a cashier at the drive-through window of Church's Fried Chicken on Gresham Road. A blue car drove up to the drive-through window and the driver, whom Richardson tentatively identified as Houston,[1] got out of the car and demanded money. Houston implied she had a gun and threatened to shoot Richardson. Richardson ducked and ran. Houston never got any money from Richardson. Richardson tentatively identified the jacket and hat seized from Houston when she was arrested as the jacket and hat worn by the robber. Richardson's manager, who witnessed the incident, identified the jacket taken from Houston as the jacket worn by the robber.

---

[1] Richardson told officers she was 80 percent certain that the photograph she identified was that of the robber.

Myranda Wright, the manager of a Kentucky Fried Chicken restaurant on Glenwood Avenue gave evidence of a similar transaction that occurred on the same day as the attempted armed robbery at Church's Fried Chicken. According to Wright, a customer sounding like a lady but looking like a man came to the drive-through and ordered a turnover. The customer stepped out of a blue car, came to the window, stuck her hand in the window and grabbed $40. Wright positively identified Houston as the robber, saying she could not forget the robber's face. Wright also testified that the army jacket taken from Houston at the time of her arrest looked like it could be the jacket the robber wore. She said the hat with little balls on the top was the one worn by the robber. In addition, Wright gave the robber's tag number to the police.

Police traced the similar tag numbers given by Reese's manager and Wright to a blue car owned by Carolyn Mayes. When detectives went to speak with Mayes, Houston was found in or near a closet in a bedroom. Also in the bedroom were a green army jacket and a winter hat with three balls hanging off the top. A two-dollar roll of nickels was in the pocket of the jacket. Mayes testified that she and Houston were close friends, that the restaurants were all near her house, that Houston had borrowed her car during the times of all three robberies, and that Houston had worn the green jacket each time she borrowed the car.

Houston matched the descriptions given by the robbery victims and, once police discovered that the green jacket and hat belonged to Houston and that Houston had borrowed the car during the times under investigation, police arrested Houston. Houston had $396 in cash on her person. The people in the room during her arrest were shocked and upset that she had so much money because Houston had borrowed money from some of them.

Houston denied borrowing Mayes' car, denied robbing the restaurants, denied that the green jacket was hers or that she had worn it during the times in question, denied being in the closet when detectives first saw her, and explained that the $396 in her possession was from her paycheck and fiancé.

1. Houston claims the trial court erred in admitting evidence of the Kentucky Fried Chicken robbery as similar transaction evidence. According to Houston, the prejudicial impact the evidence had on the jury far outweighed its probative value.

We note initially that the Kentucky Fried Chicken robbery occurred within 24 hours of the Mrs. Winner's robbery and on the same day as the Church's Fried Chicken attempted robbery. As such it can be considered a continuation of a crime spree and therefore

admissible as part of the res gestae.[2] Even were this not the case, we find no error in the trial court's admission of the Kentucky Fried Chicken incident.

Before similar transaction evidence can be introduced, the state must make three affirmative showings as mandated by *Williams v. State*.[3] First, the state must identify a proper purpose for admitting the transaction; second, the state must show that the accused committed the separate offense; and third, the state must show a sufficient similarity between the independent offense and the crime charged so that proof of the former tends to prove the latter. A decision to admit a similar transaction into evidence is within the discretion of the trial court and will not be disturbed absent an abuse of discretion.[4]

Here, Houston argues that the state failed to satisfy the third prong of the *Williams* analysis in that there were significant differences between the crimes charged and the incident in the similar transaction. She also contends that the prejudice in admitting the similar transaction evidence far outweighed its probative value.

In urging that the evidence was inadmissible, Houston erroneously focuses upon the differences between the separate crime and the crimes in question, rather than correctly focusing upon their similarities. "The proper focus is on the similarity, not the differences, between the separate crime and the crime in question."[5] Although the crimes here are not identical, there are numerous similarities. All of the robberies occurred in less than a 24-hour period. All were of drive-through windows at restaurants, and all the restaurants were located within a short distance of each other. In each robbery, the suspect walked up to the drive-through window and wore a green army jacket. In addition, a blue car was used in each of the robberies, and two of the victims saw a similar tag number on the car. A similar transaction need not be identical in order to be admissible.[6] Here, the crimes were sufficiently similar and the trial court did not err in admitting the evidence.[7]

As for Houston's argument that the prejudicial impact of the similar transaction evidence outweighed its probative value, we find this argument unpersuasive. The true test for admission is whether

[2] *Beasley v. State*, 269 Ga. 620, 623 (4) (502 SE2d 235) (1998); *Herndon v. State*, 253 Ga. App. 543, 546-547 (2) (559 SE2d 749) (2002).

[3] 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991).

[4] *Brooks v. State*, 230 Ga. App. 846 (498 SE2d 139) (1998).

[5] (Citation and punctuation omitted.) *Williams v. State*, 264 Ga. App. 115, 117 (2) (589 SE2d 676) (2003).

[6] See id.

[7] Id.; *Gay v. State*, 258 Ga. App. 854, 855 (1) (575 SE2d 740) (2002).

the evidence of prior incidents was substantially relevant for some purpose other than to show that the defendant committed the crime because he is a person of bad character; evidence which is relevant and material to an issue in the case is not inadmissible solely because it incidentally places a defendant's character in issue.[8] Clearly, the Kentucky Fried Chicken incident showed criminal intent through Houston's course of conduct and was relevant to show Houston's identity through a similar modus operandi.[9] In addition, it was this incident that led to the correct license plate number for the blue car used by Houston.[10] Any inconsistencies in a similar transaction victim's testimony affect only the weight and credibility of the testimony.[11] Since we have found no abuse of discretion by the trial court, we cannot disturb its determination that the similar transaction evidence was admissible.[12]

2. Houston contends the trial court erred in allowing a detective to read Reese's written statement to the jury because it bolstered her credibility. We find no error.

The record shows that during Reese's cross-examination, the defense read portions of the written statement to Reese in front of the jury and questioned Reese about the written statement using phrases and lines from the statement. Defense counsel pursued the inconsistencies between Reese's trial testimony and her statement to the detective, specifically the statement's identification of the robber as a man. OCGA § 24-2-4 provides that where either party introduces part of a document or record, the opposite party may read "so much of the balance as is relevant." The state was entitled to rebut the implication that Reese told the detective the robber was a male by reading the entire statement to the jury, including the portions referring to the robber as a female.

Moreover, even if the trial court did err in allowing the detective to read the written statement to the jury, a judgment need not be reversed unless the error is harmful. Since the evidence contained in the statement was also brought out during the trial and the evidence of guilt was overwhelming, no harm resulted from this alleged error.[13]

*Judgment affirmed. Smith, C. J., and Phipps, J., concur.*

---

[8] *Gay*, supra.

[9] See *Herndon*, supra at 547; *Shuman v. State*, 244 Ga. App. 335, 337 (3) (535 SE2d 526) (2000).

[10] The manager at Mrs. Winner's wrote down 706YOY, and the manager at Kentucky Fried Chicken wrote down 786YQV, which is the correct license plate number of Mayes' blue car.

[11] *Williams*, supra at 118.

[12] Id.

[13] See *Kent v. State*, 245 Ga. App. 531, 533 (3) (538 SE2d 185) (2000); *Gough v. State*, 236 Ga. App. 568, 570 (2) (512 SE2d 682) (1999).

DECIDED NOVEMBER 15, 2004.

*Carnesale & DeLan, Charles C. Flinn,* for appellant.
*Jeffrey H. Brickman, District Attorney, Barbara B. Conroy, Assistant District Attorney,* for appellee.