## A06A1624. LEE v. THE STATE.
### (636 SE2d 547)

SMITH, Presiding Judge.

A jury found Charlotte Lee guilty of two counts of armed robbery, and she pled guilty to giving a false statement to a police officer. Following the denial of her motion for new trial, Lee appeals. She contends that the trial court erred in denying her motion for a directed verdict of acquittal and in allowing evidence of an unindicted armed robbery to be used against her as a similar transaction. Lee also complains that her trial counsel was ineffective in failing to move to sever her trial from that of her co-defendant, Nathan Walker.[1] We find no merit in Lee's contentions, and we affirm her convictions.

1. Lee first maintains that the State failed to present proof beyond a reasonable doubt that she was a party to either armed robbery with which she was charged.

> The standard of review for the denial of a motion for a directed verdict of acquittal is the same as for determining the sufficiency of the evidence to support a conviction. We view the evidence in the light most favorable to the jury's

---

[1] We affirmed Walker's convictions in *Walker v. State*, 280 Ga. App. 457 (634 SE2d 93) (2006).

verdict, and the defendant no longer enjoys the presumption of innocence. We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt.

(Citations and punctuation omitted.) *Sullivan v. State*, 277 Ga. App. 738-739 (627 SE2d 437) (2006).

Three individuals were charged in the armed robberies. Lee was tried jointly with Walker.[2] Viewed in the light most favorable to the jury's verdict, the evidence presented at trial and relevant to this appeal showed that on August 26, 2003, a Payless shoe store was robbed by two men, who fled in a white Chevrolet Cavalier. A store employee positively identified photographs of the car at trial. Two days later, a pizza restaurant was robbed at gunpoint by two men. While the robbery was taking place, a delivery employee was returning to the store. He observed what was occurring and saw two men flee in a white Chevrolet Cavalier with damage to the front end. This employee was able to see the numbers 628 on the license plate of the Cavalier, and he immediately called the police. He identified photographs of the car with license tag 628LEW at trial.

Three minutes after the 911 call reporting the pizza restaurant robbery, Lee called police to report her car stolen. She also asked her roommate to call and report that she had borrowed Lee's car to go to a local shopping mall, where Lee's car was stolen. Lee's roommate complied and made the false report. At trial, however, the roommate admitted that she had not been at the mall and had not borrowed Lee's car. She identified Lee's Chevrolet from photographs.

On August 30, 2003, a DeKalb County police officer was looking for Lee's supposedly stolen car. He was approaching Lee's apartment when he learned that an armed robbery had taken place at a bagel shop near Interstate 85. He responded to that scene and learned that in this robbery, as in the others, the robbers fled in a white Chevrolet Cavalier with front end damage and a license tag that included the numbers 628. When the officer reached Lee's apartment, no one answered the door, but he spoke with a woman visiting Lee's neighbor, who told him that earlier that day a white car with front end damage had been parked in front of Lee's apartment, and she had seen a woman matching Lee's description hurrying to the car carrying clothes. She also told the officer that she had seen the same

---

[2] *Walker*, supra, 280 Ga. App. at 459. The other co-defendant, Eric Johnson, moved for severance, which was granted. See id. at 459, n. 3.

woman the day before with two men. At trial, the neighbor identified photographs of the Chevrolet Cavalier as the car she had seen.

Detectives were still present at Lee's residence when Lee's roommate arrived. Lee arrived shortly thereafter, driving her mother's car. Lee gave a detective a written statement in which she said that her roommate had telephoned her on August 28 saying she had been at the mall and had seen Lee's car being stolen. Lee also stated that she and her roommate were the only persons who had access to the car and that, aside from her roommate and herself, the only other person who sometimes stayed at her apartment was her brother. The charge of giving a false statement to an officer was based upon these statements.

When the car was later found behind a business near I-85, the detective contacted Lee, who gave him a second written statement in which she reiterated that her car had been stolen. Further investigation led to Walker and Johnson. From telephone records, a pattern of calls was found between Lee and Walker at the times of the pizza store robbery and the bagel shop robbery.

Lee's car was returned to her, and on October 29, 2003, Walker was driving it when he was stopped by a DeKalb County police officer. Walker had no driver's license and gave his name as Marlon L. Robinson and Lee's address as his home address. He was arrested, and his true identity was discovered.

Lee maintains that she did not know Walker and Johnson were using her car to commit the armed robberies and that, at most, she was an accessory after the fact and not a party to the crime. But "[u]nder OCGA § 16-2-20, a person who intentionally aids or abets the commission of the crime, or intentionally advises, encourages, hires, counsels, or procures another to commit the crime may be convicted of the crime as a party to the crime. [Cit.]" *Terrell v. State*, 268 Ga. App. 173, 174 (2) (601 SE2d 500) (2004).

> Criminal intent may be found by the jury upon consideration of the words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted. Presence, companionship and conduct before and after the offense are circumstances from which one's participation in the criminal intent may be inferred.

(Citations and punctuation omitted.) Id.

Here, Lee's car was positively identified by several witnesses as the getaway car in three armed robberies. Lee's boyfriend, Nathan Walker, who lived with her, was charged, identified, and convicted of two of the armed robberies. Telephone records indicated that Lee and Walker talked to each other at about the time of the second and third

robberies, and Lee called 911 to report that her car was stolen *three minutes* after the pizza store robbery in which her car was used. Lee asked her roommate to lie about the car being stolen. Lee's neighbor saw her hurriedly taking clothing from her apartment on the day of the bagel store robbery and placing those items in a dented white Chevrolet Cavalier. Lee admitted that she lied about the statements she gave detectives in which she indicated that her car had been stolen, that her roommate was the only other person authorized to drive her car, and that her brother was the only other person who stayed at her apartment.

Lee claims that she had no foreknowledge of the robberies and that Walker told her about the robberies only afterward and asked her to lie about her car being stolen. We reject this contention. Telephone records show that no calls were made between Lee and Walker on the day of the pizza store robbery until *after* she reported her car stolen. Telephone records also show that Lee called 911 only three minutes after the pizza store robbery. It is inconceivable that Walker could inform Lee for the first time that he had just committed an armed robbery using her car and convince her to call the police and lie about her car being stolen, all within three minutes. Furthermore, an additional robbery was committed using the car after Lee reported it stolen. Even according to Lee, she then had knowledge that her car was being used to commit armed robbery. Obviously, a jury could have concluded reasonably that Lee's conduct during and after the robberies clearly established the required intent.

2. Lee next contends that her trial counsel was ineffective because he failed to move to sever her case from that of Walker. Under *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984), to prevail on a claim of ineffective assistance of counsel, Lee must show deficient performance that results in prejudice so that but for counsel's deficiency the result of the trial would have been different. A strong presumption exists that trial counsel's performance falls within a wide range of reasonable professional conduct. *Washington v. State*, 276 Ga. 655, 658 (3) (a) (581 SE2d 518) (2003). The test of reasonable attorney performance is "whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately." (Citations and punctuation omitted.) *Boyd v. State*, 275 Ga. 772, 776 (3) (573 SE2d 52) (2002). We will affirm the trial court's finding that a defendant has received effective assistance of trial counsel unless it is clearly erroneous. *Scapin v. State*, 204 Ga. App. 725 (420 SE2d 385) (1992).

Lee was represented at trial by a very experienced criminal defense attorney. His theory of the case apparently was that Walker

was the "mastermind" of the robberies, who controlled Lee and persuaded her to cover for him. When questioned about severance at the hearing on Lee's motion for new trial, trial counsel stated that he had hoped to show the jury through the observation of the interaction between Lee and Walker that Walker took advantage of Lee's feelings for him to manipulate her into covering for him. He argued along those lines to the jury in his closing. Regardless of whether it was successful, this decision did not constitute ineffective assistance; it was a reasonable strategic decision. *Hubbard v. State*, 274 Ga. App. 184, 186 (4) (617 SE2d 167) (2005).

Moreover, "[t]o be successful, a defendant seeking severance must clearly show that the joinder will result in prejudice to him or her and a consequent denial of due process." (Citations and punctuation omitted.) *Shelton v. State*, 279 Ga. 161, 162 (2) (611 SE2d 11) (2005). Factors to be considered include whether a joint trial will cause the jury to be confused regarding the evidence and law; whether the jury will consider evidence introduced against one defendant against the other as well, despite cautionary instructions; and whether the accuseds' defenses are antagonistic. Id. Here, the jury was unlikely to confuse the evidence applicable to Walker and to Lee, their defenses were not mutually antagonistic, and, in fact, Lee may have benefitted from being able to point to Walker as being the controlling figure in the robberies. "We will not reverse on the basis of ineffective assistance of counsel unless trial counsel's conduct so undermined the proper functioning of the adversarial process that the trial could not reliably have produced a just result. [Cit.]" *Mency v. State*, 228 Ga. App. 640, 642 (2) (492 SE2d 692) (1997).

3. In Lee's final enumeration of error, she asserts that the trial court erred in allowing evidence of the bagel store robbery to be admitted as a similar transaction. We do not agree.

Under *Williams v. State*, 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991), to be admissible, a similar transaction must be introduced by the State for a proper purpose; sufficient evidence must be presented showing that the accused committed the separate offense; and sufficient similarity must exist between the independent offense and the charged crime so that proof of the former tends to prove the latter. *Houston v. State*, 270 Ga. App. 456, 458 (606 SE2d 883) (2004). The decision to admit a similar transaction is within the discretion of the trial court. We will not disturb that decision absent an abuse of discretion. Id.

Here, the trial court held a hearing and concluded that evidence of the bagel store armed robbery was admissible both as a similar transaction and as res gestae. The trial court found that this evidence was admissible to show Lee's state of mind, knowledge, and intent in allowing her car to be used in armed robberies of retail businesses

during daylight hours; that sufficient proof was presented that Lee was involved in the bagel store robbery since she again permitted the car to be used in a robbery after she falsely reported it stolen; and that sufficient similarity existed between this robbery and the two charged armed robberies so that proof of the former tended to prove the latter.

It is difficult to see how this could be error when the bagel store robbery was virtually identical to the other two robberies, and it was certainly relevant to show that Lee knew of the crimes and intended to allow Walker and Johnson to use her car to commit the crimes. We find no abuse of discretion in admitting evidence of this crime. See *Houston*, supra, 270 Ga. App. at 458 (similar robbery admissible because it occurred fairly close in time to charged robberies, involved same blue car, and method used was same); *Mullins v. State*, 267 Ga. App. 393, 396-397 (2) (599 SE2d 340) (2004) (carjackings within four days of each other and involving same white Chevrolet Caprice); *Rust v. State*, 264 Ga. App. 893, 899-900 (5) (592 SE2d 525) (2003) (same burgundy car used for two robberies). The trial court did not err in admitting evidence of the bagel store robbery as a similar transaction.

*Judgment affirmed. Ruffin, C. J., and Phipps, J., concur.*

DECIDED SEPTEMBER 6, 2006.

*Franklin & Hubbard, Rodney A. Williams*, for appellant.
*Gwendolyn Keyes Fleming, District Attorney, Daniel J. Quinn, Assistant District Attorney*, for appellee.