A04A1586. KING v. THE STATE.
(603 SE2d 54)

BLACKBURN, Presiding Judge.

Following his conviction for child molestation,[1] Gilbert W. King appeals, arguing that the evidence is insufficient to support his conviction because his daughter recanted at trial. For the reasons that follow, we affirm.

> On appeal from a criminal conviction, the evidence must be construed in the light most favorable to the jury's verdict, and the defendant no longer enjoys the presumption of

---

[1] OCGA § 16-6-4.

innocence. An appellate court does not weigh the evidence or judge the credibility of the witnesses but only determines whether the evidence to convict is sufficient under the standard of *Jackson v. Virginia.*[2] Conflicts in the testimony of the witnesses, including the State's witnesses, are a matter of credibility for the jury to resolve. So long as there is some competent evidence, even though contradicted, to support each element of the State's case, the jury's verdict will be upheld.

(Footnote omitted.) *Reeves v. State.*[3]

So viewed, the evidence shows that on July 21, 2003, workers with the Department of Family & Children Services took V. K., the seven-year-old victim, to a doctor for a physical examination because of reports of possible abuse. The doctor testified that he found no physical signs of sexual abuse but noted that in cases involving fondling or touching of the genitals, the absence of physical evidence of abuse is not uncommon. During the examination, V. K. told the doctor that her daddy had told her to keep secrets or he would spank her. When the doctor asked what secrets, V. K. said she didn't know, but when he asked her if she meant secrets about her privates, the term she had used for her vaginal area, she replied "yes." The doctor then asked if her father had touched her privates, but V. K. denied that he had. She then volunteered that she and her daddy had been lying in bed together "butt naked."

After the physical examination, V. K. was referred by a child protective services investigator to a child advocacy center, where she was interviewed. As part of the interview, V. K. was shown an anatomical drawing of a girl; she identified the vaginal area as the "privates," an area that others should not touch. At first, V. K. denied that anyone else had touched her privates, but when the interviewer began talking about good and bad secrets, V. K. became much more responsive. She said that her daddy had told her to keep secrets, that she had a bad secret, and that if she told the secret, she would be in trouble and would get a whipping. She told the interviewer that her father had touched her, and when asked where, she pointed to the privates on the drawing. She said that her father had touched her while they lay on his bed watching television, and that it had happened "lots" of times. She also indicated that her father had touched her underneath her clothes.

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[3] *Reeves v. State*, 244 Ga. App. 15, 17 (1) (a) (534 SE2d 179) (2000).

V. K. informed the interviewer that her mother knew about her father's touching her because she had caught him "a lot of times" when she returned from work, and that when she caught him she told him to stop but did nothing else. She told the interviewer that "Daddy shouldn't touch me there," and said that sometimes it hurt when he touched her.

The interview with V. K. was videotaped, admitted without objection, and played for the jury. At trial, the interviewer testified that children who fear punishment for revealing abuse are less likely to reveal it, and that an interview is affected when a child's mother does not support the child.

When V. K. took the stand, she testified that nobody had touched her, and that she and her father had not been naked. She acknowledged that she had not spoken with the prosecuting attorney at any length before trial because her mother would not let her talk with him. V. K. told the State's attorney that she was scared and that if she told a secret she was not supposed to tell, she would get in trouble with her daddy, who would whip her with a switch. When pressed further, she denied ever having told the interviewer that anybody had touched her privates. On cross-examination, when asked if her daddy ever touched her privates, she replied, "No, sir."

King argues that the evidence was insufficient to support the verdict because the jury should have believed V. K.'s testimony at trial that he did not touch her genitals. V. K.'s recantation, however, does not render the evidence against King insufficient. *Cheek v. State.*[4]

Although V. K.'s testimony at trial contradicted what she said in the videotaped interview, "it was for the jury, rather than this Court, to resolve conflicts and to assess witness credibility." *Brady v. State.*[5] The jury was authorized to believe the victim's videotaped testimony, corroborated by her statements to the doctor who examined her, that her father had, on numerous occasions, touched her vaginal area, rather than her in-court disavowal. *Lee v. State.*[6] Further, there was testimony that indicated that V. K.'s mother did not want her daughter to testify against King, and that V. K. was afraid that she would be whipped if she told the secret she shared with her father. Viewed to support the verdict, a rational trier of fact could conclude beyond a reasonable doubt that V. K.'s fear of punishment and her

---

[4] *Cheek v. State*, 265 Ga. App. 15, 16 (1) (593 SE2d 55) (2003).

[5] *Brady v. State*, 233 Ga. App. 287, 288 (1) (503 SE2d 906) (1998).

[6] *Lee v. State*, 250 Ga. App. 110, 111-112 (1) (550 SE2d 696) (2001).

mother's disapproval caused her to recant. *Dameron v. State*[7] (holding that rational trier of fact could conclude beyond a reasonable doubt that victim's concerns about her mother and fear of being placed in foster care moved her to recant). Accordingly, we find the evidence sufficient to support King's conviction for child molestation beyond a reasonable doubt.

*Judgment affirmed. Barnes and Mikell, JJ., concur.*

DECIDED JULY 23, 2004.

*Billy M. Grantham*, for appellant.

*J. Brown Moseley, District Attorney, Charles M. Stines, Ronald R. Parker, Assistant District Attorneys*, for appellee.

---

[7] *Dameron v. State*, 267 Ga. App. 671, 672 (3) (601 SE2d 137) (2004).