## A04A1797. LEAPTROT v. THE STATE.
### (612 SE2d 887)

ADAMS, Judge.

Harold Edward Leaptrot, Jr. appeals following his conviction by a Chatham County jury of one count of attempted child molestation, one count of enticing a child for indecent purposes, three counts of

---

[43] *City of Atlanta v. Spearman*, 209 Ga. App. 644, 645 (1) (434 SE2d 87) (1993).

child molestation, one count of attempted statutory rape and one count of burglary. We affirm.

1. Leaptrot first challenges his convictions on the general grounds. The victims in the case were two teenage girls, C. A. and R. H. Leaptrot asserts that the state failed to carry its burden of proof with regard to the attempted child molestation of C. A. because the evidence did not show that he took a substantial step toward molesting her. He argues that, at most, the evidence showed that C. A. was "being groomed" to be his victim. Leaptrot also asserts that the evidence was insufficient to support the remaining convictions, involving R. H., because at trial, R. H. recanted her prior statements to police with regard to these offenses.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to the jury's verdict, and the defendant no longer enjoys the presumption of innocence. We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt.

(Citations omitted.) *Colbert v. State*, 255 Ga. App. 182 (564 SE2d 787) (2002).

(a) *Charge Involving C. A.*

When viewed in the light most favorable to the verdict, the evidence shows that both C. A. and R. H. knew each other and both were introduced to Leaptrot through mutual friends. C. A., who was 13 at the time, met Leaptrot in December 1998 at a party attended mostly by teenagers. Leaptrot was then 50 years old and indicated that he came to the party to find a girlfriend. Upon meeting C. A., Leaptrot gave her marijuana, money and a cell phone and offered to take her on an expensive shopping trip. C. A. testified that she knew that Leaptrot wanted to have sex with her, but she said that she was just using Leaptrot because he gave her "[a]nything you could imagine that a 13-year-old girl might want." During their relationship, Leaptrot gave C. A. makeup, clothes, jewelry, CDs, roses, balloons, cash and marijuana. He also paid her monthly cell phone bill. Leaptrot gave C. A. a key to his house and allowed her to visit after school, where he would leave marijuana and cash for C. A. and her friends. At least once per week, Leaptrot reminded C. A. that he expected her to have sex with him in return for his generosity. During their relationship, Leaptrot repeatedly placed his hand on C. A.'s leg and asked her to have sex, but she always tried to avoid the situation. In September 1999, C. A. disclosed her relationship with Leaptrot to her counselor, who reported the matter to police.

In order to prove attempted child molestation, the state was required to show that Leaptrot performed an act that constituted a substantial step toward doing "any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or [himself]." OCGA §§ 16-4-1; 16-6-4 (a). See also *Tanner v. State*, 259 Ga. App. 94, 96 (1) (b) (576 SE2d 71) (2003).

> To constitute an attempt there must be an act done in pursuance of the intent, and more or less directly tending to the commission of the crime. In general, the act must be inexplicable as a lawful act, and must be more than mere preparation. Yet it can not accurately be said that no preparations can amount to an attempt. It is a question of degree, and depends upon the circumstances of each case. . . . The fact that further steps must be taken before the crime can be completed does not preclude such a finding that the steps already undertaken are substantial.

(Footnote omitted.) *New v. State*, 270 Ga. App. 341, 343 (1) (606 SE2d 865) (2004). "[T]he 'substantial step' requirement is intended to (1) ensure firmness of the defendant's criminal intent, (2) insulate from liability 'very remote preparatory acts,' and (3) allow for apprehension of offenders at an early stage without providing immunity for their actions." *Dennard v. State*, 243 Ga. App. 868, 872 (1) (a) (534 SE2d 182) (2000).

Here, Leaptrot, who was looking for a teenage girlfriend, met C. A. at a party and began showering her with gifts and marijuana with the express intent of inducing her to engage in sexual intercourse with him. Toward that end, he repeatedly placed his hand on her leg and asked her for sex. We find that the evidence at trial was sufficient to enable the jury to convict Leaptrot of attempted child molestation. See *Wittschen v. State*, 259 Ga. 448, 449 (2) (383 SE2d 885) (1989); *Lopez v. State*, 258 Ga. App. 92, 94 (572 SE2d 736) (2002). Cf. *Dennard v. State*, 243 Ga. App. at 872-873 (1) (a).

(b) *Charges Involving R. H.*

R. H., who was 13 or 14 years old at the time, met Leaptrot through her mother. R. H. is blind and walks with a limp. In addition to her physical limitations, R. H. is in the borderline range of mental ability, which means somewhere between mental impairment and low-average intelligence. As he did with C. A., Leaptrot plied R. H. with jewelry, money and other gifts. R. H. testified at trial that she fell in love with Leaptrot when she was 14 and he was around 49. But she denied that anything improper had ever happened between them. During the state's examination of R. H., the prosecutor introduced a

letter that R. H. admitted writing to Leaptrot, in which she professed her love for him and stated, "I'm sorry for putting you where you are. I will do anything to make it up because it's my fault."

In January 2000, the Chatham County Department of Family and Children Services received a report about the possibility of an improper relationship between R. H. and an adult male. The DFACS caseworker who interviewed R. H. testified that R. H. told him that she met Leaptrot at a friend's house when she was 14; Leaptrot gave her a calling card, cash and a diamond ring. Leaptrot told R. H. that he was in love with her, and she said that she also had strong feelings for him. They had discussed sexual matters and planned to marry when she turned 17.

(i) During the time of his relationship with R. H., Leaptrot lived with his adult girlfriend, Delilah Mendez. On April 24, 2000, Mendez came home from work and upon opening Leaptrot's bedroom door, discovered R. H. and Leaptrot standing very close together by the bed. It appeared that Leaptrot was fondling R. H. around the neck and ears, with his head very close to her neck. Mendez also smelled a strong odor of marijuana, which she did not allow in her house. Mendez called 911 to report the incident, but Leaptrot and R. H. fled before the police arrived.

The police found R. H. a short time later in the parking lot of a nearby grocery store. She told the officers that Leaptrot had picked her up from a friend's house and taken her to Mendez's house where he smoked marijuana. He offered R. H. some marijuana, but she refused. Leaptrot then tried to kiss and fondle her, but she told him to stop, which he did. Leaptrot returned to Mendez's house later that day to retrieve his wallet. He told Mendez that he was in love with R. H. and that they planned to get married in two years.

Leaptrot was charged with enticing a child for indecent purposes in connection with this incident. "A person commits the offense of enticing a child for indecent purposes when he or she solicits, entices, or takes any child under the age of 16 years to any place whatsoever for the purpose of child molestation or indecent acts." OCGA § 16-6-5 (a). Here, the evidence showed that Leaptrot picked up R. H. from a friend's house and took her to a bedroom at Mendez's house, where Mendez observed him stroking and fondling the child's neck and ears. R. H. later told police that Leaptrot had tried to fondle and kiss her. The fact that R. H. testified at trial that nothing improper had occurred between Leaptrot and her does not render the evidence insufficient to support the verdict. "It is for the jury and not this Court to resolve conflicts and to assess witness credibility." (Punctuation and footnote omitted.) *Cheek v. State*, 265 Ga. App. 15, 16 (1) (593 SE2d 55) (2003).

And viewed to support the verdict, a rational trier of fact could conclude beyond a reasonable doubt that R. H. changed her story because she was in love with Leaptrot, hoped to marry him and felt bad about getting him in trouble. Cf. *King v. State*, 268 Ga. App. 707, 709 (603 SE2d 54) (2004). We find, therefore, that there was sufficient evidence for the jury to find Leaptrot guilty of this charge beyond a reasonable doubt. *Hicks v. State*, 254 Ga. App. 814, 816 (3) (563 SE2d 897) (2002).

(ii) In the early morning hours of August 3, 2000, R. H.'s older sister heard sounds coming from R. H.'s bedroom and went to investigate. As she attempted to open R. H.'s door, she realized that the bed had been moved to block the door. The sister got help from a family friend to push the door open. She observed that the bed was messed up, and R. H. appeared to be in shock. R. H. said that Leaptrot had been in her room, and the sister noticed that the blinds were messed up. She called the police.

Officers from the Savannah Police Department responded to the call. The sister told police what had happened and said that she had seen Leaptrot crawling out of her sister's window. R. H. told the officers that Leaptrot had come in through her window uninvited and had placed his hand over her mouth, telling her not to say anything. He instructed her to push her bed in front of the door so that no one could enter. Leaptrot then removed R. H.'s panties and his own pants. He laid on top of R. H., but she squeezed her legs together so that he could not penetrate her. Leaptrot fondled R. H.'s breasts and touched her nipples. She told the officers that she had intentionally rattled the blinds so her sister would hear and come to investigate. R. H. also told the officers that on a prior occasion, Leaptrot made her touch his penis with her hand.

On August 30, 2000, Detective Derrick Roberson of the Savannah Police Department interviewed Leaptrot. During that interview, he admitted buying gifts for C. A. and R. H.; admitted taking R. H. to the movies; claimed that C. A. had offered to have sex with him for $500; and admitted that he had been involved in Colorado in a prior sex-related offense. In a later interview with R. H., she told Detective Roberson that Leaptrot was her boyfriend and that he had bought gifts for both C. A. and her.

The remaining charges against Leaptrot stem from this August 3, 2000 incident: three counts of child molestation, one count of attempted statutory rape and one count of burglary. The jury convicted Leaptrot of all counts, but the trial court merged the attempted statutory rape count into the counts of child molestation. Despite R. H.'s recanting of her earlier statements, we find that the evidence was sufficient to enable a rational trier of fact to convict Leaptrot of these charges under *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781,

61 LE2d 560) (1979). See *Amerson v. State*, 268 Ga. App. 855, 856 (1) (602 SE2d 857) (2004); *Neal v. State*, 264 Ga. App. 311, 311-312 (1) (590 SE2d 168) (2003); *Ochoa v. State*, 252 Ga. App. 209, 210 (1) (555 SE2d 857) (2001). We note that in addition to the victim's earlier statement, the state presented corroborating evidence from her sister.

2. Leaptrot next contends that he was denied effective assistance of counsel on a number of grounds.

> The two-prong test for determining the validity of a claim for ineffectiveness of counsel provided in *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984), asks whether counsel's performance was deficient and, if so, whether this deficiency prejudiced the defense; that is, whether there is a reasonable possibility that the outcome of the proceedings would have been different but for counsel's deficiency.

(Citation omitted.) *Weeks v. State*, 270 Ga. App. 889, 894 (3) (608 SE2d 259) (2004). "There is a strong presumption that trial counsel provided effective representation, and we will not find ineffectiveness if trial counsel's strategy and trial tactics were reasonable at the time." (Footnotes omitted.) *Welbon v. State*, 278 Ga. 312, 313 (2) (602 SE2d 610) (2004). Moreover, we will affirm a trial court's determination that a defendant has received effective assistance of counsel in the absence of clear error. *Ross v. State*, 265 Ga. App. 178, 180 (2) (593 SE2d 365) (2004).

(a) Leaptrot asserts that his counsel was ineffective in failing to conduct a sufficient and adequate investigation of his case, in failing sufficiently to understand the facts and law upon which the charges against him were based and in failing to meet with him an adequate number of times. Leaptrot's trial counsel testified at the hearing on the motion for new trial that he had practiced law for thirty-two years, the last eight to ten years of which he had devoted full-time to criminal work. He estimated that he had tried between 200 and 250 felony jury trials. Since Leaptrot's trial, the attorney had become a magistrate court judge. He stated that over the past ten to fifteen years, he handled more child molestation trials than any other attorney in Chatham County.

At the time he represented Leaptrot, the trial attorney retained a full-time private investigator on his payroll to assist him in investigating his cases. While Leaptrot testified that he met with his trial attorney only twice and the investigator only two to three times, his attorney testified that he and his investigator met with Leaptrot many, perhaps ten to fifteen times before trial, including personal

visits from the attorney approximately every three to four weeks. The attorney's investigator visited his clients on a rotating basis two days per week every week. He stated that he made an effort to review every page of the case's voluminous discovery with Leaptrot despite Leaptrot's reluctance to do so. And he offered to allow Leaptrot to take the discovery back with him to his cell, but Leaptrot declined.

Moreover, Leaptrot conceded at the hearing that, regardless of the number of contacts he had with his attorney, he could not think of anything else he would have told the attorney in preparation for trial. And despite his assertions on appeal, Leaptrot fails to point to any specific instance in the record to demonstrate that his trial attorney's purported failure to understand the facts or the law or his alleged lack of preparation harmed the presentation of his defense at trial. Because he has failed to establish that his trial attorney's alleged ineffectiveness prejudiced his defense, the trial court properly denied his motion for new trial on this ground. See *Washington v. State*, 274 Ga. 428, 430 (2) (554 SE2d 173) (2001).

(b) Leaptrot next contends that his trial counsel was ineffective in failing to move for a severance of the offenses involving the two separate victims. But Leaptrot's trial attorney testified that he chose not to pursue a motion to sever as a matter of trial strategy. He believed that C. A.'s testimony would have been admissible in the trial of the charges involving R. H., and he felt that C. A. was a very good witness. He thought it best to try the two cases together in an attempt to persuade the jury that Leaptrot was a victim of "a bunch of young teenagers, who had found a mark and knew how to get money from him." "Trial strategy and tactics do not equate with ineffective assistance of counsel." (Punctuation and footnote omitted.) *Caylor v. State*, 255 Ga. App. 362, 364 (1) (566 SE2d 33) (2002). Thus, this argument provides no basis for an ineffective assistance claim. *Dye v. State*, 266 Ga. App. 825, 827 (2) (a) (598 SE2d 95) (2004).

(c) Leaptrot also asserts that his trial counsel was ineffective in failing to file a speedy trial demand despite his repeated demands that the request be filed. Leaptrot's attorney testified that he strongly urged against filing a speedy trial demand as a matter of trial strategy. He believed that the longer this case took to come to trial the better the chance "of receiving a desired verdict."[1] Moreover, Leaptrot has failed to show a reasonable probability that the outcome of the trial would have been different but for this decision. The trial court did not err in concluding that counsel was not ineffective on this

---

[1] In fact, R. H. and her family moved from Georgia to another state prior to trial in an effort to hide from law enforcement officials. Despite a subpoena, R. H.'s family arrived one day late for the trial, because they "did not want to come."

ground. *Floyd v. State*, 263 Ga. App. 3, 5 (3) (587 SE2d 166) (2003).

(d) Leaptrot further argues that his trial attorney was ineffective in stipulating to the admission of hearsay evidence, apparently certain letters purportedly written by R. H. But Leaptrot failed to question his counsel about this decision during the hearing on the motion for new trial. Without trial counsel's testimony on this issue, it is extremely difficult to overcome the presumption that the decision regarding this evidence fell "within a wide range of reasonable, professional conduct." (Footnote omitted.) *McPetrie v. State*, 263 Ga. App. 85, 92 (9) (587 SE2d 233) (2003).

Moreover, we note that the record demonstrates that Leaptrot's counsel planned to offer three of these letters into evidence as part of his defense. But he agreed to stipulate to the admission of these letters by the state in order to preserve the right to present the final closing argument. Moreover, R. H. was available at trial for cross-examination on these letters. Accordingly, this decision was one of trial strategy and does not support a finding of ineffective assistance of counsel.

And although Leaptrot refers to "an unsigned, undated, never sent letter," he does not identify this letter by exhibit number or record citation. It appears that Leaptrot may be referring to either State Exhibit 11 or 12, which were unsigned, undated letters. The state presented evidence showing that one of these letters was found under R. H.'s chair at school and the other was found in the printer in a computer lab used by R. H. And although R. H. disavowed any knowledge of these letters, she was available for further cross-examination. Without testimony from his trial counsel regarding these letters, however, we find that Leaptrot has failed to overcome the presumption that his counsel's failure to object was reasonable trial strategy.[2] Nor has he shown any prejudice in the admission of such letters in light of R. H.'s testimony that she loved Leaptrot.

(e) Leaptrot asserts that his trial counsel was ineffective in failing to object and/or file a motion for mistrial following two remarks made by the prosecutor during opening statement: (1) "The evidence will show that Defendant is a convicted felon, a convicted sex offender from Colorado" and (2) the "Defendant is a sexual predator." But Leaptrot failed to elicit testimony on this issue from his trial counsel at the hearing, making it extremely difficult for him to overcome the strong presumption that counsel's decision not to object was part of a reasonable trial strategy. See *McPetrie v. State*, 263 Ga.

---

[2] Leaptrot's attorney also enumerates error in the admission of such evidence. Because his attorney failed to object to its admission, however, this issue is waived. *Wilson v. State*, 277 Ga. 114, 117 (2) (587 SE2d 9) (2003).

App. at 92 (9); *Caylor v. State*, 255 Ga. App. at 364 (2) (attorney's failure to object to opening statement was reasonable trial strategy).

Moreover, we find no clear error in the trial court's finding that these remarks were proper references to the evidence and matters that the prosecutor expected to prove at trial, and thus would have provided no ground for a successful objection. We note that the trial court had already ruled that the evidence regarding Leaptrot's Colorado conviction was admissible as a similar transaction. See *Frazier v. State*, 278 Ga. 297, 298 (2) (602 SE2d 588) (2004); *Bellamy v. State*, 272 Ga. 157, 160 (5) (527 SE2d 867) (2000) (state can inform jury in opening statement what evidence it expects to present).[3]

Leaptrot also asserts that his own trial counsel made derogatory remarks about him during the trial that should have resulted in a mistrial. He contends that his trial counsel stated that he had not heard of anything more despicable than the witnesses and testimony in this case, but he fails to give any record citation for such remarks. As an initial matter, we note that Leaptrot did not raise this issue before the trial court in his motion for new trial and thus this issue is waived. *Hayes v. State*, 262 Ga. 881, 882 (2) (426 SE2d 886) (1993).

Further, while we were unable to locate this purported statement by Leaptrot's trial attorney, we note that his counsel did state during opening argument that "this is about the most sickest [sic] case I have ever tried in my life because of the people involved." But he made this statement in the context of discussing C. A.'s admission that she was using Leaptrot for money and in addressing evidence that R. H.'s mother "was pimping her blind daughter" to Leaptrot. Thus, this statement concerned the prosecution's witnesses in this case, and not Leaptrot himself, and he has failed to establish how any such remark resulted in prejudice to him.

(f) Leaptrot enumerates as error his trial counsel's failure to subpoena a witness and his failure to object to derogatory remarks made by the prosecutor during closing argument. But because Leaptrot fails to present any argument on these enumerated errors, we deem these issues abandoned. See Court of Appeals Rule 25 (c) (3) (i); *Gore v. State*, 272 Ga. App. 155,156 (2) (611 SE2d 764) (2005).

(g) Leaptrot also asserts ineffective assistance of counsel in his attorney's failure to object at trial to the admission of similar transaction evidence. Because we find in Division 3 below that such evidence was properly admitted, Leaptrot cannot establish ineffective assistance of counsel on this ground.

---

[3] Accordingly, Leaptrot's enumeration that these statements in the prosecutor's opening statement necessitate a reversal is also without merit.

3. Leaptrot contends that the trial court erred in admitting similar transaction evidence. In order to establish the admissibility of such evidence, the state is required to make three affirmative showings as outlined in *Williams v. State*, 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991):

> First, the state must identify a proper purpose for admitting the transaction; second, the state must show that the accused committed the separate offense; and third, the state must show a sufficient similarity between the independent offense and the crime charged so that proof of the former tends to prove the latter.

*Houston v. State*, 270 Ga. App. 456, 458 (1) (606 SE2d 883) (2004). It is within the discretion of the trial court whether to admit such evidence and we will not disturb that decision absent an abuse of discretion. Id.

The exception to the general rule that evidence of other crimes is not admissible has been most liberally extended in the area of sexual offenses:

> In crimes involving sexual offenses, evidence of similar previous transactions is admissible to show the lustful disposition of the defendant and to corroborate the victim's testimony. There need only be evidence that the defendant was the perpetrator of both crimes and sufficient similarity or connection between the independent crime and the offenses charged.

(Punctuation and footnote omitted.) *Hogan v. State*, 272 Ga. App. 19, 21 (1) (611 SE2d 689) (2005).

Here, the state filed notice of its intent to introduce similar transaction evidence, and at the beginning of the trial, the trial judge conducted a hearing under *Williams v. State*. The trial court issued limiting instructions to the jury as to such evidence, and reminded them during the jury charge that this evidence could be considered only for very limited purposes. Thus, pretermitting whether Leaptrot's counsel waived this argument on appeal by failing to object,[4] we find that the trial court did not abuse its discretion in admitting such evidence.

(a) The evidence showed that Leaptrot met C. A. in December 1998 and continued his relationship with her until September 1999

---

[4] See *Marshall v. State*, 268 Ga. App. 444, 445 (2) (602 SE2d 227) (2004).

when her counselor reported the relationship to police. Leaptrot met R. H. when she was 13 or 14. R. H. turned 13 on April 20, 1998, and his relationship with her continued until August 2000.

As one similar transaction, the state presented testimony of M. B., a minor child, who stated that she met Leaptrot in March or April 1999 when she was 14 years old. M. B. met him when she was skipping school when Leaptrot took her to Mendez's house where he provided her with marijuana, which they smoked together. Another time when she was skipping school, she met Leaptrot and a group of teenagers at a trailer park in Thunderbolt, Georgia. Leaptrot obtained marijuana and cocaine, and ingested these substances with M. B. and the other teenagers. On a third occasion, M. B. met Leaptrot after she ran away from home. He took her and some other teenagers to Mendez's closed business where they smoked marijuana.

During these occasions, Leaptrot talked about C. A. He said that he liked her and was buying her gifts, but did not understand why she would not have sex with him. The last time M. B. saw Leaptrot was on or about May 11 or 12, 1999, when he drove her to her house to get some clothes. M. B.'s parents summoned the police when she came home and she was taken to the local Youth Detention facility, where she tested positive for marijuana use. M. B. testified that she had used marijuana that day with Leaptrot, who had furnished the drug.

As a result of this incident, M. B.'s father swore out a Good Behavior Warrant on May 13, 1999, which ordered Leaptrot to stay away from M. B., and the Chatham County Juvenile Court issued a protective order on June 10, 1999, with Leaptrot's assent, restraining him from further contact with M. B.

Although this behavior did not result in a criminal conviction, the state proffered this evidence to show Leaptrot's lustful disposition, course of conduct, bent of mind and modus operandi in dealing with teenaged girls. It was also proffered to corroborate the testimony of the child victims regarding Leaptrot's behavior toward them. The trial court applied the *Williams* factors in finding this evidence admissible. We find no abuse of discretion. "[S]imilar transaction evidence is not limited to a defendant's previous illegal conduct." *Phagan v. State*, 268 Ga. 272, 279 (4) (486 SE2d 876) (1997). And this Court has previously upheld the admission of similar transaction evidence demonstrating noncriminal, but inappropriate or questionable behavior by a defendant toward young girls as tending to show the defendant's lustful disposition. *Sears v. State*, 182 Ga. App. 480, 483 (5) (356 SE2d 72) (1987), overruled on other grounds, *Johnston v. State*, 213 Ga. App. 579, 580 (445 SE2d 566) (1994).

(b) The state also presented evidence that on January 20, 2000, Leaptrot invited three teenaged girls, including M. L., into his home while they were skipping school. M. L. testified at trial that Leaptrot

first took them on a shopping trip where he bought them expensive gifts and then took them to his residence where they smoked marijuana together. Later that afternoon, Leaptrot left to pick up A. F., a 13-year-old girl, and bring her back to his house. A. F. testified that Leaptrot picked her up that day and brought her back to his house where she smelled marijuana.

That day, a Tybee Island police officer observed A. F. and Leaptrot driving and thinking this suspicious, followed them back to Leaptrot's residence. He saw A. F. and Leaptrot go inside and called for other officers. The officers knocked on the door, and when Leaptrot answered, he appeared very nervous and closed the door behind him. Police detected the smell of burning marijuana and asked to search the apartment. Leaptrot reluctantly consented, and police discovered several minors inside along with marijuana sitting on the kitchen counter. Leaptrot was arrested and subsequently pled guilty to a charge of possession of marijuana and multiple counts of contributing to the deprivation of a minor.

Applying the *Williams* factors, the trial court found the evidence admissible to show an overall course of conduct. We find no abuse of discretion. "There is no requirement that the prior crime or transaction be absolutely identical in every respect." (Punctuation and footnote omitted.) *Williams v. State*, 263 Ga. App. 22, 24 (2) (587 SE2d 187) (2003). See also *Sears v. State*, 182 Ga. App. at 483 (5).

(c) The state also introduced evidence of Leaptrot's prior Colorado conviction. The victim in that case was a woman in her late 20s, who was developmentally disabled and mildly retarded, with the academic skill level of a five- or six-year-old child. At the time of the incident, Leaptrot was counselor at the assisted living facility where the victim resided.

On November 16, 1989, Carol Bridges, the director of the facility received a report that the victim had been assaulted in her apartment. The victim reported that Leaptrot had entered the apartment through her window, removed her clothes and stuck his finger inside her vagina. He then laid on top of her and tried to place his penis in her vagina. The victim said that Leaptrot refused to leave despite her requests that he do so. Denver police obtained a warrant for Leaptrot's arrest, but he fled the state. Savannah area police later alerted the Denver police to Leaptrot's whereabouts, and he was placed under arrest. Leaptrot subsequently pled guilty to criminal attempt — second degree sexual assault.

The trial court admitted this evidence on the ground that it shows course of conduct, bent of mind, lustful disposition, modus operandi and tends to corroborate the child victims' testimony. Leaptrot argues, however, that the offense was too remote in time and

further argues that the trial court erred in allowing Bridges to testify to the victim's hearsay statements because the victim was not present to testify.

As an initial matter, we note that this evidence was not inadmissible simply because the prior offense involved an adult. *Barrett v. State*, 253 Ga. App. 357, 358 (1) (559 SE2d 108) (2002) (there is no "per se" rule excluding evidence of prior sexual offenses involving adults in child molestation cases). As in the August 2000 incident involving R. H., the evidence showed that Leaptrot entered the room of a mentally challenged victim through a window, removed her clothing and attempted penetration. The two acts are sufficiently similar, the only real difference being that the victim in this case was a minor and the similar transaction victim was an adult. Under these circumstances, the prior transaction was admissible. *Kingsley v. State*, 268 Ga. App. 729, 730 (1) (603 SE2d 78) (2004).

And we find that this incident was not too remote to be admissible. The Denver incident occurred almost 11 years before the similar incident involving R. H. The Georgia appellate courts previously have upheld the admission of similar transaction evidence involving incidents occurring 11 to 19 years prior to the crime at issue. *Gilstrap v. State*, 261 Ga. 798, 799 (1) (410 SE2d 423) (1991); *Godbey v. State*, 241 Ga. App. 529, 530 (1) (526 SE2d 415) (1999) (18 years). "Where, as here, the similar transaction evidence is otherwise admissible, a time lapse such as this goes to the weight and credibility of the evidence and does not demand its exclusion." (Footnote omitted.) *Hogan v. State*, 272 Ga. App. at 22 (1).

Nor did the trial court abuse its discretion in allowing Bridges to testify regarding the victim's statement. The trial court found that Bridges's testimony fell within the res gestae exception to the hearsay rule. "A trial court's determination that evidence is admissible as part of the res gestae will not be disturbed unless it is clearly erroneous." (Citation and punctuation omitted.) *Stovall v. State*, 216 Ga. App. 138, 139 (1) (453 SE2d 110) (1995). Bridges testified that she arrived in the victim's apartment shortly after the crime occurred when the victim was still upset and shaking. "Declarations accompanying an act, or so nearly connected therewith in time as to be free from all suspicion of device or afterthought, shall be admissible in evidence as part of the res gestae." OCGA § 24-3-3. We find that this testimony was admissible as a part of the res gestae.[5] See *Dixon v. State*, 275 Ga. 232, 233 (3) (564 SE2d 198) (2002). In addition, even if it were error to admit hearsay testimony in connection with this prior

---

[5] Moreover, the state presented evidence demonstrating that the victim was unavailable due to her limited mental capacity and emotional state.

crime, the error was harmless as it was cumulative of other admissible evidence. See *Woods v. State*, 275 Ga. 844, 850 (4) (573 SE2d 394) (2002). Leaptrot admitted to the facts of the prior crime at his plea hearing.[6]

Accordingly, the trial court did not abuse its discretion in admitting the similar transaction evidence.

4. Leaptrot asserts that the trial court erred in merging the attempted statutory rape charge into a child molestation charge, instead of merging the molestation charges into the attempted statutory rape charge. The three child molestation counts addressed separate acts allegedly performed with the requisite intent under OCGA § 16-6-4: Count 3 charged Leaptrot with touching R. H.'s breasts; Count 4 charged Leaptrot with causing R. H. to touch his penis and Count 5 charged Leaptrot with removing his pants and those of R. H. The charge of attempted statutory rape also addressed Leaptrot's actions in removing his clothing and that of R. H. We note that Count 4 refers to an incident that occurred prior to the August 2000 incident. Moreover, charges of child molestation addressing different conduct do not necessarily merge even if they occurred at the same time and the same place. *Minter v. State*, 245 Ga. App. 327, 330 (4) (537 SE2d 769) (2000). Here, the evidence establishing that Leaptrot fondled the victim's breasts was not used up in proving that he removed her clothing and attempted penetration. Accordingly, all three charges would not be subject to merger with the attempted statutory rape count. Only the child molestation charge alleged in Count 5 would potentially merge with the statutory rape charge.

The trial court noted that the merger rule requires that the lesser offense merge into a greater offense based upon the same conduct, and the court sentences only on the greater offense. See *Youmans v. State*, 270 Ga. App. 832, 834 (2) (608 SE2d 300) (2004). The court found that the attempt charge merged into the child molestation charge because a charge of attempt, by definition, involves fewer elements than a completed offense. OCGA § 16-4-1. But Leaptrot argues that a charge of child molestation would merge into a charge of statutory rape under the same circumstances. See *Dorsey v. State*, 265 Ga. App. 404, 406 (2) (593 SE2d 945) (2004). He contends that the same should apply to a charge of attempted statutory rape.

Under OCGA § 16-1-6 (1), two offenses will merge as a matter of fact if one of them is established by proof of the same or less than all the facts required to prove the other.

[6] Although Leaptrot did not specifically raise the issue of hearsay testimony of the victim's statements made by other witnesses in connection with this incident, we find no error in the admission of this evidence as it was cumulative of Leaptrot's own admission.

As with any factual merger question, the dispositive issue is whether the State "used up" its evidence in proving the crime: "The actual evidence test, in effect, means that if the state uses up all the evidence that the defendant committed one crime in establishing another crime, the former crime is included in the latter as a matter of fact under OCGA § 16-1-6 (1)." (Cits.)

(Citation omitted.) *Washington v. State*, 271 Ga. App. 764, 767 (3) (610 SE2d 692) (2005).

Proof of attempted statutory rape requires proof of Leaptrot's intent to commit statutory rape and a substantial step toward completing this crime. OCGA §§ 16-4-1; 16-6-3; *Neal v. State*, 264 Ga. App. at 311-312 (1). But the crime of child molestation requires additional proof showing the commission of the completed crime. Thus, the state was required to prove: the commission of an immoral or indecent act (here removing the victim's and his own clothing); the victim's age is less than 16 and Leaptrot's intent to arouse or satisfy his own or the child's sexual desires. OCGA § 16-6-4. The state used up the evidence that the defendant committed attempted statutory rape in establishing that he committed child molestation. Under these circumstances, we find no error in the trial court's merger of the two offenses.

*Judgment affirmed. Ruffin, C. J., and Bernes, J., concur.*

DECIDED MARCH 30, 2005 — 

*Martin G. Hilliard*, for appellant.
*Spencer Lawton, Jr., District Attorney, Gregory M. McConnell, David T. Lock, Assistant District Attorneys*, for appellee.

