**THIRD DIVISION
MILLER, P. J.,
RAY and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/**

**March 1, 2013**

# In the Court of Appeals of Georgia

A12A2300. LUNA-FRAIDE v. THE STATE.

BRANCH, Judge.

On appeal from his conviction for rape, child molestation, aggravated child molestation, and false imprisonment, Omar Luna-Fraide argues that the evidence was insufficient and that the trial court's charge on child molestation authorized the jury to find him guilty of that crime in a manner other than that charged in the indictment. We find no error and affirm.

"On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence." (Citation omitted.) *Reese v. State*, 270 Ga. App. 522, 523 (607 SE2d 165) (2004). We neither weigh the evidence nor judge the credibility of witnesses, but determine only whether, after viewing the evidence in the light most favorable to the

prosecution, a "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Citation omitted.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

So viewed, the record shows that on March 26, 2009, the nine-year-old victim told her mother that her private parts hurt. The mother noticed blood on the victim's underwear and asked if anyone had touched her. The victim replied that Luna-Fraide had. Luna-Fraide was the family's sole source of financial support at the time. The mother took the victim to the hospital, where the mother wrote a statement that the victim had told her that Luna-Fraide had wanted to sleep with the victim, that she was afraid of him doing so, and that he had put something like a finger inside her vagina four times. In a videotaped interview made shortly afterward at a child advocacy center, the victim said that Luna-Fraide had first groped her the previous Christmas. The victim testified that after her mother began working in 2009, the molestation "got worse and worse": while Luna-Fraide was babysitting the victim, he took her into the bedroom he shared with the victim's mother, pulled down her pants and underwear, touched and licked her privates, made her rub his penis, and penetrated her "bottom" with his penis.

Shortly after Luna-Fraide was arrested, the mother moved herself and the three children out of Luna-Fraide's apartment and into the apartment of a couple, including a man named Carlos, who lived in the same complex. The mother admitted at trial that she continued to have "feelings" for Luna-Fraide after his arrest, that she had called him frequently, and that she had visited him in jail more than 10 times.

A psychologist who conducted a series of follow-up interviews with the victim testified at trial that the mother was uncommunicative during their first session. During a second session, the victim handed the psychologist a written note naming Carlos as her attacker and also insisting that her mother had not told her to say so. To the psychologist, this suggested that the victim had been coached on the identity of her attacker. At the same session, the victim cried and said that she felt guilty for accusing Luna-Fraide because he "had learned his lesson," would not hurt anyone else, and could not visit his dying mother from jail. During the third session, the victim said that she was angry because "[Luna-Fraide] hurt her." During the fourth session, the victim again named Carlos as her assailant and said that she was scared of him. The mother missed three subsequent therapy appointments and failed to mention that the family had been living with Carlos. The psychologist also testified that it was "very

common" for victims of child sexual abuse to change their accounts of the abuse depending on "how much support they feel is around them."

Luna-Fraide was charged with one count of rape, two counts of child molestation, two counts of aggravated child molestation, and one count of false imprisonment. At trial, the victim confirmed her original account naming Luna-Fraide as her attacker. The victim also testified that Carlos had touched her a number of times. A treating doctor testified that the victim's hymen was consistent with penetration, that she was suffering from vaginal and anal chlamydia, that these features were consistent with sexual assault, and that the only means of contracting the disease was through sexual contact with an infected person. Luna-Fraide tested positive for chlamydia. A jury found him guilty on all counts, and the trial court sentenced him to 35 years to serve. His motion for new trial was denied.

1. Luna-Fraide first argues that the victim's recantation rendered the evidence against him insufficient. We disagree.

(a) The jury in this case heard not only the victim's account of the abuse at trial, in which she returned to naming Luna-Fraide as her assailant, but also testimony from her mother and a caseworker concerning the circumstances of her recantation. The evidence also supported a conclusion that Luna-Fraide suffered from chlamydia and

that the victim contracted that disease as a result of his attacks. Finally, the mother's involvement with Luna-Fraide after his arrest explained the distress the victim showed at and after her recantation. "[I]t was for the jury, rather than this Court, to resolve conflicts and to assess witness credibility." (Citation, punctuation footnote omitted.) *King v. State*, 268 Ga. App. 707, 709 (603 SE2d 54) (2004). The evidence was thus sufficient to affirm Luna-Fraide's conviction for rape, child molestation, and aggravated child molestation. OCGA §§ 16-6-1 (a) (defining rape), 16-6-4 (a) (defining child molestation), 16-6-4 (c) (defining aggravated child molestation as "an act of child molestation which act physically injures the child or involves an act of sodomy"); *King*, supra at 709-710 (despite victim's recantation at trial, which could have been the result of her mother's "disapproval," evidence including the victim's previous videotaped interview was sufficient to sustain her father's conviction for child molestation); *Rollins v. State*, 318 Ga. App. 311, 313 (733 SE2d 841) (2012) (testimony of child molestation victim, standing alone, was sufficient to sustain defendant's conviction).

(b) Under OCGA § 16-5-41 (a), a person commits the offense of false imprisonment "when, in violation of the personal liberty of another, he arrests, confines, or detains such person without legal authority." Thus "[a]ll that is required

5

to prove false imprisonment is . . . an arrest, confinement or detention of the person, without legal authority, which violates the person's personal liberty (i.e., against his or her will)." (Citation and punctuation omitted.) *Murrell v. State*, 317 Ga. App. 310, 316 (1) (730 SE2d 675) (2012); see also OCGA § 16-5-41 (a). "A brief detention is sufficient[, and w]hether the detention amounted to false imprisonment was for the jury to decide." (Footnote omitted.) *Rehberger v. State*, 235 Ga. App. 827, 828 (1) (510 SE2d 594) (1998).

The indictment alleged that Luna-Fraide "did unlawfully confine and detain" the victim, "a child under 14 years of age and not being the child of the accused . . . without legal authority." Construed in favor of the verdict, the evidence showed that Luna-Fraide took the victim into the room he shared with her mother and detained her there against her will as he sexually assaulted her. This evidence is sufficient to sustain Luna-Fraide's conviction for false imprisonment. See *Murrell*, supra at 316-317 (1) (evidence that defendant convicted of child molestation entered victim's room, placed his hand over her mouth, and lay on top of her was sufficient to sustain his conviction for false imprisonment as well); *Rehberger*, supra at 828 (1) (holding a child victim against her will, even briefly, amounted to false imprisonment); *Herrin*

*v. State*, 229 Ga. App. 260, 263 (3) (493 SE2d 634) (1997) (OCGA § 16-5-41 (a) does not on its face require that imprisonment be for specific length of time).

2. Luna-Fraide also argues that the trial court did not sufficiently tailor its charge on child molestation to count 2 of the indictment, which specified that he had touched the victim with his hand. We disagree.

OCGA § 16-6-4 (a) (1) provides that a person commits child molestation when that person "[d]oes any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person." Count 2 charged Luna-Fraide with committing an "immoral and indecent act . . . with the intent to arouse and satisfy the sexual desires of the accused by touching her vagina with his hand."

The record shows that the trial court read the indictment verbatim to the jury and charged them that "no person shall be convicted of any crime unless and until each element of the crime *as charged* is proven beyond a reasonable doubt." (Emphasis supplied.) The trial court then charged the jury that "a person commits the offense of child molestation when that person does an immoral and indecent act to a child less than 16 years of age with the intent to arouse and satisfy the sexual desires of that person." Luna-Fraide did not object to this or any other portion of the charge.

7

In the absence of an objection, we review the charge only for plain error. See OCGA § 17-8-58 (b); *State v. Kelly*, 290 Ga. 29, 33 (2) (718 SE2d 232) (2011). "We have held that the child molestation statute does not set forth alternative methods by which the crime may be committed, so no error arises from reading the entire definition." *Edwards v. State*, 253 Ga. App. 479, 482-483 (4) (559 SE2d 506) (2002). The charge was tailored to the indictment in that it specified that Luna-Fraide touched the victim with the intent of satisfying his rather than the victim's desires. Even though the portion of the charge consisting of the reading of the statute did not specify the immoral or indecent act committed, the charge taken as a whole, including the indictment, did so specify, and thus "cannot be reasonably deemed to have presented the jury" with a basis for finding Luna-Fraide guilty of a crime not charged. Id. (trial court did not err in reading the statutory definition of child molestation when the court also read the indictment and charged the jury that it had to find the defendant guilty of the offense "*as alleged in the indictment*") (punctuation and footnotes omitted; emphasis in original). It follows that there was no error, plain or otherwise, here. *Kelly*, 290 Ga. at 34 (2) (where instruction was not erroneous, no plain error can be shown).

*Judgment affirmed. Miller, P. J., and Ray, J., concur.*

8