## A03A2160. CHEEK v. THE STATE.

(593 SE2d 55)

RUFFIN, Presiding Judge.

A jury found Anthony Wilbert Cheek guilty of child molestation, aggravated child molestation, and two counts of aggravated sexual battery. Cheek appeals, asserting that the trial court erred in excluding certain evidence and in exhibiting prejudice against him. He further argues that the State presented insufficient evidence to support the charges. For reasons that follow, we affirm.

1. In reviewing Cheek's challenge to the sufficiency of the evidence, we construe the evidence in a light most favorable to the jury's verdict.[1] On appeal, we do not weigh the evidence or assess witness credibility, but merely determine whether a rational trier of fact could have found Cheek guilty of the crimes charged beyond a reasonable doubt.[2]

Viewed in this manner, the evidence shows that, on January 7, 2002, Officer Suzie Thorne was dispatched to investigate allegations of child molestation brought by eight-year-old E. P. E. P. reported to Thorne that Cheek, her mother's husband, had placed his finger inside her "front part" and her "butt" and that "it hurt." E. P. stated that this abuse had been going on "for a long time" and that when it first began, she saw blood on her panties.

Investigators subsequently interviewed E. P. at the GreenHouse, an advocacy center for children, and the jury was shown a videotape of the interview. During the interview, E. P. confirmed that Cheek had put his finger in her "front part," which she identified as the vag-

---

[5] See id.; *Ancrum v. State,* 197 Ga. App. 819 (1) (399 SE2d 574) (1990).
[1] See *Grooms v. State,* 261 Ga. App. 549 (1) (583 SE2d 216) (2003).
[2] See id.

inal area on an anatomical drawing, and her "butt." She also stated that this abuse had happened "a lot," and she specifically recalled that, on January 6, 2002, Cheek put his finger in her "butt."

E. P. also told two doctors who examined her in the days following her outcry that Cheek had fondled her rectal and vaginal areas with his finger on multiple occasions. In addition, she reported to one doctor that Cheek had placed his penis on the area between her vaginal opening and rectum, and she indicated to the other that Cheek had placed his penis "in front." The medical examinations revealed a slight redness in E. P.'s vaginal area, as well as an unusual vaginal discharge, both of which could have been caused by digital penetration. Although the doctors found no definitive evidence of sexual abuse, they noted that the type of abuse alleged by E. P. would not necessarily leave signs of physical trauma.

E. P. reiterated at trial that, when Cheek stuck his finger in her vagina and rectum, he moved his finger around and "it hurt." She further testified that, although she recanted her statements about Cheek at one point, Cheek had touched her in the way she reported. The State also presented evidence that Cheek submitted to a polygraph examination. During the test, he denied that he touched E. P. with his penis, that he placed his finger in her rectum, or that he placed his finger in her vagina for sexual gratification. According to the polygraph examiner, however, Cheek showed signs of deception when answering these questions.

The jury found Cheek guilty of aggravated child molestation, two counts of aggravated sexual battery, and child molestation. On appeal, Cheek argues that, because E. P. recanted her testimony at one point and doctors found no definitive physical evidence of abuse, the evidence did not support his convictions. E. P.'s recantation, however, does not render the evidence against Cheek insufficient.[3] "It is for the jury and not this Court to resolve conflicts and to assess witness credibility."[4] Furthermore, although doctors found no conclusive medical evidence of abuse, the State offered testimony that such evidence would not necessarily be expected in this type of case.

Based on the evidence presented, the jury was authorized to determine that, as alleged in the indictment, Cheek committed aggravated child molestation by placing his finger into E. P.'s vagina and moving it around, causing her physical harm.[5] The evidence also supported the jury's conclusion that Cheek engaged in two acts of aggravated sexual battery by penetrating her vagina and her anus

---

[3] See *Frady v. State*, 245 Ga. App. 832 (1) (a) (538 SE2d 893) (2000).

[4] Id.

[5] See OCGA § 16-6-4 (c) (defining aggravated child molestation); *Grooms*, supra at 550.

with a foreign object, specifically, his finger.[6] Finally, the jury was authorized to find Cheek guilty of child molestation by touching his penis on her vaginal area.[7] Cheek's challenge to the sufficiency of the evidence, therefore, lacks merit.

2. Prior to trial, the State learned that Cheek planned to introduce evidence that E. P. had falsely accused his brother, William, of molesting her. The State moved in limine to exclude this evidence, and the trial court granted the motion. Cheek enumerates this ruling as error.

Evidence that an alleged molestation victim has made prior false accusations of sexual misconduct against others is admissible.[8] "Before admitting such evidence, however, the trial court must make a threshold determination outside the presence of the jury that there is a reasonable probability the prior accusations were false."[9] The defendant bears the burden of establishing this "reasonable probability," which has been defined as "one 'sufficient to undermine confidence in the outcome.' "[10] We will not disturb the trial court's determination on this threshold issue absent an abuse of discretion.[11]

At the hearing, William testified that he had never molested E. P. or touched her inappropriately. William's wife also testified that she was present whenever E. P. and William were together and that no inappropriate behavior occurred. The trial court, however, deemed this evidence insufficient to establish a reasonable probability of falsity.

We find no error. An accused's assertion that the accusations against him are false does not necessarily raise a reasonable probability of falsity.[12] Evidently, the trial court doubted the truth of William's denial. And the trial court specifically found William's wife lacking in credibility. Nothing in the record shows that the trial court erred in making these credibility determinations.[13] It follows that the trial court did not abuse its discretion in concluding that Cheek showed no reasonable probability of falsity.

---

[6] See OCGA § 16-6-22.2 (defining aggravated sexual battery); *Torres v. State*, 262 Ga. App. 309, 310 (585 SE2d 228) (2003) ("A finger satisfies the 'foreign object' element of [aggravated sexual battery].").

[7] See OCGA § 16-6-4 (a) (defining child molestation); *Hayes v. State*, 252 Ga. App. 897, 900 (2) (557 SE2d 468) (2001).

[8] See *Hall v. State*, 254 Ga. App. 131, 132 (1) (561 SE2d 464) (2002).

[9] Id.

[10] Id. See also *Mills v. State*, 251 Ga. App. 39, 41 (2) (553 SE2d 353) (2001) (placing burden on defendant).

[11] See *Hall*, supra.

[12] See *Wagner v. State*, 253 Ga. App. 874, 878 (2) (560 SE2d 754) (2002). See also *Hall*, supra.

[13] See *Hall*, supra ("[W]e review the trial court's determinations concerning the credibility of witnesses [who testified at the hearing] only for clear error.").

3. Cheek also argues that the trial court created an unfair atmosphere during trial that prejudiced him. Specifically, he claims that the trial judge "made decisions and comments which displayed a partial attitude."[14]

The first incidence allegedly showing partiality occurred during the hearing regarding E. P.'s prior accusation against Cheek's brother, William. At that hearing, Cheek asserted that, to establish a reasonable probability of falsity, he only needed to present evidence that William denied the allegation. In response, the trial court stated: "I wouldn't expect [William] to come in and admit to it." According to Cheek, this comment showed that the trial court had "an attitude of disbelief prior to the presentation of the evidence." We disagree. The comment merely reflects the trial court's conclusion that a reasonable probability of falsity is not necessarily established by the accused's denial of the allegation. And, as noted above, this conclusion is fully supported by our case law.[15]

Cheek also claims that the trial court expressed an unfair attitude toward him by reprimanding his family at trial. The record shows that, during trial, the district attorney approached the bench and asked the trial court to instruct the audience members, some of whom were reportedly laughing and making faces, to behave properly. Defense counsel noted that he had already told these audience members to act appropriately, but he could not "control them." The trial judge excused the jurors from the courtroom, then informed all spectators as follows:

> If you have to make a noise, if you have to laugh, if you have to make any kind of facial expressions, roll your eyes, or do anything that would distract from the dignity and serious-ness of this court proceeding I'm going to have you removed from the courtroom. Now I want you to understand that and that's in no uncertain terms. I'm very serious about this issue and I think that's a fair warning. I'm not going to give the warning again. If there is a problem from here on out with any kind of activity in the spectator area, well, I'm going to remove you from the courtroom.

A trial court has the power and discretion "[t]o preserve and enforce order in its immediate presence and, as near thereto as is necessary, to prevent interruption, disturbance, or hindrance to its

---

[14] See OCGA § 17-8-57 ("It is error for any judge in any criminal case, during its progress or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused.").

[15] See *Wagner*, supra.

proceedings."[16] The trial judge reprimanded the spectators in an effort to keep the proceedings under control and to prevent a disturbance. The reprimand did not evidence any prejudice toward Cheek, and the judge gave instruction to the audience members outside the presence of the jury. We find nothing improper in the trial court's conduct.

Finally, Cheek argues that the trial court's decision on two evidentiary matters demonstrated prejudice. He asserts that, during a sidebar conference regarding the admissibility of testimony relating to E. P.'s recantation, the trial court "began to argue the State's position." The record shows, however, that the court merely questioned defense counsel about the basis for his objection. And, following a rather lengthy discussion, defense counsel abandoned his objection to the testimony. Cheek also asserts that the trial court revealed its prejudice by allowing Officer Thorne to testify that, according to E. P., Cheek told E. P. to call him "Fat Daddy." In Cheek's view, this testimony constituted inadmissible hearsay that should have been excluded.

Pretermitting whether a trial court's evidentiary rulings, by themselves, could ever establish impartiality on the part of the trial court,[17] the instances cited by Cheek certainly show no prejudice or partiality here. As noted above, Cheek dropped his objection to the recantation witness' testimony, so the trial court never ruled on the matter. Furthermore, we cannot find that the hearsay ruling regarding Cheek's nickname, even if erroneous, demonstrated any prejudice toward Cheek.[18]

Cheek has pointed to no comments, rulings, or actions by the trial court that created a prejudicial atmosphere at trial or displayed any judicial bias. Accordingly, this enumeration of error lacks merit.[19]

*Judgment affirmed. Smith, C. J., and Miller, J., concur.*

DECIDED DECEMBER 30, 2003.

---

[16] OCGA § 15-1-3 (1). See also *Simpkins v. State*, 149 Ga. App. 763, 769 (4) (256 SE2d 63) (1979) (" 'Discretion in regulating and controlling the business of the court is necessarily confided to the judge.' ").

[17] See *Leggon v. State*, 249 Ga. App. 467, 473 (6) (549 SE2d 137) (2001) ("[T]he statutory inhibition [under OCGA § 17-8-57] against an expression or intimation of opinion by the trial court as to the facts of the case does not generally extend to colloquies between the judge and counsel regarding the admissibility of evidence.") (punctuation and footnote omitted).

[18] We note that Cheek did not enumerate this hearsay ruling as error on appeal.

[19] See *Seidenfaden v. State*, 249 Ga. App. 314, 318 (2) (547 SE2d 578) (2001).

*Michael A. Corbin*, for appellant.

*Kermit N. McManus, District Attorney, Stephen E. Spencer, Assistant District Attorney*, for appellee.