A05A0770. HOGAN v. THE STATE.
(611 SE2d 689)

PHIPPS, Judge.

Following the denial of his motion for new trial, Ernest "Buckie" Hogan appeals his convictions of two counts of child molestation and one count each of aggravated child molestation, possession of marijuana with intent to distribute, exhibiting pornography to a minor, and contributing to the delinquency of a minor. He challenges the trial court's admission of similar transaction evidence and the effectiveness of his trial attorney. We find no abuse of discretion in the trial court's admission of the evidence and no deficiency in defense counsel's performance, and we thus affirm Hogan's convictions.

In October 2000, Hogan, who was then about 43 years old, approached and befriended 14-year-old J. S. and persuaded him to come with him to his camper to smoke marijuana. There Hogan provided J. S. with alcohol, asked him if he was a virgin, and told him that he, Hogan, was gay.

Hogan subsequently invited J. S. to an overnight Halloween party at Hogan's grandmother's house, near his camper. Hogan told J. S. that his two nieces, who were about J. S.'s age, would be there. On the day of the party, Hogan went to J. S.'s house with his two nieces, met J. S.'s father, and got his permission to take J. S. to the party. During the party, Hogan and J. S. went to the camper to smoke marijuana and drink. Because Hogan had told J. S. that it was an overnight party, J. S. was surprised when the party ended and everyone else left. Hogan then took J. S. back to his camper, gave him a pornographic magazine, and suggested that he masturbate. After

---

J. S. lay down in one of the beds, Hogan got into bed with him, rubbed his back, inserted his finger in J. S.'s anus, and tried to kiss him on the mouth. J. S. testified that although he did not want Hogan to do those things, he did not resist because Hogan told him that if he did not let him do what he wanted to do, J. S. would never see his parents again. J. S. further testified that Hogan then instructed him to stand up and pull his pants down, whereupon Hogan went into the bathroom, got some lotion, rubbed the lotion on J. S.'s anus, and then inserted his penis into J. S.'s anus. Afterward, Hogan drove J. S. home. For several weeks thereafter, J. S. experienced rectal bleeding.

Initially, J. S. did not tell his parents what had happened. He did, however, tell a school friend that somebody named Buck had touched him inappropriately. J. S.'s friend told her mother, who reported the matter to authorities. Upon being questioned by his school counselor, J. S. acknowledged that he had gone to Buck's house, that he and Buck had drunk alcohol and smoked marijuana together, and that Buck had tried to "feel on" him. The counselor reported the incident to the sheriff's office. After interviewing J. S., Houston County Sheriff's Investigator Charles Bishop obtained a warrant to search Hogan's camper. During the search, officers found marijuana, alcohol, and pornographic material depicting teenage boys engaging in homosexual acts.

After the incident, J. S. became angry, depressed, and withdrawn. His grades dropped and he began to get into trouble at school. During a confrontation with his father, J. S. threatened to kill himself. He then broke down, engaged in a crying spell that lasted several hours, and admitted to his father, and then to Bishop, that Hogan had forced him to have anal intercourse. J. S. was seen by a pediatrician, who testified that an anal examination of J. S. revealed mature scar tissue consistent with an injury that could have been caused by penetration of the anus.

Similar transaction evidence was introduced concerning prior incidents involving R. M., J. K., B. A., and A. C. According to R. M., who was 23 years old at the time of trial, when he was between 12 and 14 years old, Hogan approached and befriended him. At Hogan's invitation he went to Hogan's house. Hogan gave him alcohol to drink, and while they were drinking Hogan put his hand on R. M.'s knee, showed him a pornographic movie, and tried to persuade him to engage in sexual activity.

When J. K. and B. A. were about 11 or 12 years old, in June 1992, Hogan approached them, struck up a friendship, and invited them to his house where he provided them with marijuana and alcohol and showed them pornographic magazines and movies. Both of them testified that Hogan had tried to touch them inappropriately. J. K. provided testimony from which the jury was authorized to find that

Hogan had engaged in anal intercourse with him after J. K. had passed out from drinking.

A. C. testified that in July 2000, when he was 13 years old, Hogan had invited him to spend the night in his camper, and when he woke up the next morning, Hogan was fondling him and trying to put his mouth on A. C.'s penis. Reports were made to police of the incidents involving J. K., B. A., and A. C. The incidents involving J. K. and B. A. resulted in an investigation during which Hogan's home was searched. Pornographic material and marijuana were seized.

1. Relying primarily on *Williams v. State*[1] and *Tyson v. State*,[2] Hogan contends that the trial court abused its discretion by allowing the state to introduce the similar transaction evidence. We do not agree.

> "In crimes involving sexual offenses, evidence of similar previous transactions is admissible to show the lustful disposition of the defendant and to corroborate the victim's testimony. There need only be evidence that the defendant was the perpetrator of both crimes and sufficient similarity or connection between the independent crime and the offenses charged." [Cit.][3]

As recognized in cases such as *Nichols v. State*[4] and *Livery v. State*,[5] the exception to the general rule that evidence of independent crimes is inadmissible has been most liberally extended in the area of sexual offenses.

*Williams* involved possession of cocaine with intent to distribute. The state presented evidence of a similar transaction through nothing more than a certified copy of the defendant's prior conviction for a similar crime. Our Supreme Court held:

> While the certified copy may have been enough to establish that Williams committed the independent offense, it did not establish the similarity or connection between that independent offense and the crime charged. Indeed, the state presented no evidence to the jury to establish that similarity or connection.[6]

---

[1] 261 Ga. 640 (409 SE2d 649) (1991).
[2] 232 Ga. App. 732 (503 SE2d 640) (1998).
[3] *Gibbins v. State*, 229 Ga. App. 896, 899 (4) (495 SE2d 46) (1997).
[4] 221 Ga. App. 600, 601 (3) (473 SE2d 491) (1996).
[5] 233 Ga. App. 332, 334 (1) (a) (503 SE2d 914) (1998).
[6] 261 Ga. at 643 (2) (d).

Here, unlike in *Williams*, the state presented evidence that Hogan had perpetrated similar sexual offenses against children of the same age and gender using a similar method of operation. The requisite similarity between the independent offenses and the crimes charged was clearly established.

*Tyson* considered the question of when similar transactions are too remote in time to be considered relevant. *Tyson* involved a prosecution for child molestation, aggravated child molestation, and aggravated sodomy committed between 1990 and 1994; the similar transactions took place between 1956 and 1961. Under those facts, we held that the trial court should have found the similar transaction evidence inadmissible. We noted that other sexual abuse cases allowing admission of similar transaction evidence more than 20 years removed from the offenses charged involved either a continuous course of criminal conduct often involving different generations of the same family or situations in which the defendant had been incarcerated for some of the intervening time.[7]

Here, one of the similar transactions took place about three months before the offenses charged. The other similar transactions took place about eight years earlier. Where, as here, the similar transaction evidence is otherwise admissible, a time lapse such as this goes to the weight and credibility of the evidence and does not demand its exclusion.[8] In admitting the similar transaction evidence, the trial court did not abuse its discretion.[9]

2. Hogan charges his trial lawyer with ineffective assistance in failing to have Hogan tested to show that he was impotent, in failing to impeach similar transaction witnesses with prior inconsistent statements and criminal records, and in failing to impeach J. S. with evidence of behavioral problems at school.

At the hearing on Hogan's motion for new trial, defense counsel testified that he attempted without success to obtain medical evidence showing that Hogan had been impotent at the time he allegedly molested J. S.; that if the similar transaction witnesses had made any prior inconsistent statements he would have used those to impeach them; that he did not investigate their criminal backgrounds because he did not think their juvenile records would yield any useful impeachment evidence; and that ample evidence concerning J. S.'s behavioral problems was admitted at trial and other such evidence would probably have been ruled inadmissible.

---

[7] 232 Ga. App. at 733 (1).

[8] See *Sweet v. State*, 237 Ga. App. 613, 615 (2) (516 SE2d 317) (1999); *Nichols v. State*, supra at 601-602.

[9] See, e.g., *Livery v. State*, supra.

Hogan has not specifically identified any medical evidence pertaining to himself, or any prior inconsistent statements made by or criminal records relating to the state's witnesses, or any admissible impeaching evidence concerning J. S., that defense counsel should have introduced. As in cases such as *Ray v. State*,[10] Hogan has not met his burden of showing that trial counsel's performance was deficient and that the deficiency prejudiced his defense.

*Judgment affirmed. Andrews, P. J., and Mikell, J., concur.*

DECIDED MARCH 4, 2005.

*Renate D. Moody*, for appellant.

*Howard Z. Simms, District Attorney, Dorothy V. Hull, Assistant District Attorney*, for appellee.

