## A06A1229. MAYNARD v. THE STATE.
(639 SE2d 389)

BARNES, Judge.

Keith Maynard appeals his convictions of two counts of aggravated child molestation with a fifteen-year-old female victim. He contends the trial court erred by allowing the prosecutor to ask questions about his refusal to discuss the allegations against him, by allowing testimony about sexual misconduct that took place twenty years earlier when he was ten to twelve years old with two younger, male cousins, and by sentencing him for aggravated child molestation when he had been acquitted of statutory rape. Because we find that the trial court committed harmful error by allowing the State to cross-examine Maynard about his refusal to discuss the allegations against him and by allowing the State to introduce the evidence regarding Maynard's sexual misconduct with his young male cousins, we must reverse his convictions and remand the case to the trial court.

The record on appeal shows that thirty-one-year-old Maynard, a former police officer, was charged with three counts of child molestation and statutory rape involving a fifteen-year-old victim, who was part of a police-affiliated Scout program. The indictments alleged that the same girl was the victim of all the crimes.

Although denied by Maynard and controverted by his witnesses, the evidence, viewed in support of the verdict, shows that Maynard and the victim had a relationship that began with her romantic

feelings toward Maynard, kissing, and petting that led to sexual intercourse and oral sodomy on numerous occasions.

Ultimately, another officer noticed problems with the victim and spent time talking to her, until the victim related Maynard's actions to the officer. In addition to her oral report of Maynard's actions, the victim provided the police with her date book in which she had kept a record of their activities.

During the course of the initial investigation, Maynard called the victim on her cell phone, and, according to a female officer, when she answered, he told her that he was sorry, that he was going to go to prison, and that he would lose his children. In the same conversation, Maynard also spoke with a supervising officer who had known him for many years and had earlier written a letter of recommendation for Maynard when he joined the force. The officer testified that Maynard apologized to this officer and also said that he was not going to call the victim a liar.

After a jury trial, Maynard was acquitted of aggravated child molestation by placing his mouth on the genital area of the victim and of her statutory rape, but the jury convicted him of aggravated child molestation by placing his penis in her mouth and by having sexual intercourse with her.

Based upon these convictions, Maynard was sentenced to thirty years in prison, with ten years to serve. After his motion for a new trial was denied, Maynard filed this appeal.

1. Although not enumerated as error, we find the evidence sufficient to sustain Maynard's convictions under the test announced in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Maynard first contends that the trial court erred by allowing the State to question a law enforcement officer and Maynard himself about his refusal to discuss or deny the allegations against him. The transcript shows that the prosecution called a fellow police officer, who was a close friend of Maynard, to testify about a conversation he had with Maynard after the victim made the allegations that led to the charges against Maynard.

Before this officer testified, a hearing was held without the presence of the jury during which Maynard objected to the prosecution questioning the officer about that conversation. Maynard contended that such testimony would violate his rights against self-incrimination under the Georgia and United States Constitutions. The trial court overruled Maynard's objection, but allowed him a continuing objection to this testimony.

The officer then testified before the jury, repeating his out of court testimony about his conversation with Maynard. Part of the prosecution's direct examination of the officer, however, included further questions about whether the officer told other officers that

when he questioned Maynard that night, Maynard said the victim "had no reason to lie about the situation." The officer denied having made such a remark, and when questioned by the prosecutor whether "[a]t any time during that conversation did [Maynard] deny having an affair with [the victim]," the officer replied, "No, sir."

The officer also testified that he was a very good friend of Maynard, and he received a telephone call from Maynard's wife, who was concerned about Maynard because he had left the house shortly after receiving a telephone call and she did not know where he went or what he was going to do. In response to this call from Maynard's wife, and not as part of the investigation of Maynard's conduct, the officer spoke with Maynard over the telephone that night. He spoke with Maynard "just as a friend."

Maynard told the officer what he was being accused of, and the other officer asked him "if the allegations were true or false or, you know, exactly what was going on." And, Maynard "wouldn't talk about it. He didn't want to discuss it." He did not deny it.

Later in the trial, the prosecution, over objection, also questioned Maynard about the conversation with his fellow officer. After placing in context Maynard's friendly relationship with the officer, the prosecutor asked Maynard, "[a]nd you talked to [the officer] that night and you never denied anything that [the victim] said when you talked to [the officer] did you?" Maynard replied that he was never asked. The prosecutor continued: "He is telling you about what is being said, you are telling him what you have been accused of," and "you never said it was not true?" Maynard replied, "He's an East Ridge police officer, sir, anything I said would be considered used against me." The prosecutor continued, "So if you would have told him I didn't do that then he would of [sic] had to tell his boss and tell us that he said he didn't do it; right?" Maynard: "That's correct, sir." The prosecutor then said, "But you didn't tell him I didn't do it did you," and Maynard replied: "I told him I didn't need to talk about it."

After Maynard again put his objections to this line of questioning on the record, the prosecutor continued, "You never told him . . . I didn't do it did you?" Maynard answered, "No, sir, I didn't know what I had been accused of completely." The prosecutor responded, "You never denied it in any way did you," and Maynard answered that he did not.

Maynard contends this questioning violated the rule against commenting upon a defendant's silence or failure to come forward. See *Mallory v. State*, 261 Ga. 625, 629-630 (5) (409 SE2d 839) (1991) ("a comment upon a defendant's silence or failure to come forward is far more prejudicial than probative"). In *Jarrett v. State*, 265 Ga. 28, 29 (1) (453 SE2d 461) (1995), the Supreme Court of Georgia stated that the basis for the rule was that "the high degree of potential

prejudice of any comment upon a defendant's silence or failure to come forward far outweighs its minimal probative value." Therefore,

> *Mallory* prohibits "any testimony touching upon the silence of an accused, because the prejudicial impact of such testimony is far greater than its minimal probative value." (Punctuation omitted.) *Wallace v. State*, 272 Ga. 501, 503 (2) (530 SE2d 721) (2000). *Mallory* established a hard and fast rule, although federal constitutional precedents did not require such a strict approach.

*Gordon v. State*, 250 Ga. App. 80, 82 (550 SE2d 131) (2001).

Because Maynard was aware that he was a target of a criminal investigation, the exception to the *Mallory* rule stated in *Glidewell v. State*, 279 Ga. App. 114, 123-124 (7) (d) (630 SE2d 621) (2006), and *Morrison v. State*, 251 Ga. App. 161, 163 (3) (554 SE2d 190) (2001), does not apply in this case.

The State responds to this allegation by asserting that Maynard's argument addressed only a small portion of the officer's testimony, that the officer's testimony on this point was introduced so that the prosecution could introduce the officer's inconsistent statement that Maynard had made a statement, and ignored the officer's later impeachment with a prior inconsistent statement by another officer who testified that the first officer told him that Maynard said that the victim had no reason to lie.

Regardless of whether the trial court erred by allowing the officer's testimony about Maynard's silence, the State has not responded to Maynard's contention that the trial court also erred by allowing the prosecutor to question *him* about his silence. Nevertheless,

> [i]mproper reference to a defendant's silence does not automatically require reversal; the error may be found to be harmless beyond a reasonable doubt. The determination of harmless error must be made on a case by case basis, taking into consideration the facts, the trial context of the error, and the prejudice created thereby as juxtaposed against the strength of the evidence of the defendant's guilt.

(Citation and punctuation omitted.) *Allen v. State*, 272 Ga. 513, 515-516 (5) (530 SE2d 186) (2000). To warrant reversal, however, the evidence of Maynard's decision to remain silent must point directly at the substance of his defense or otherwise substantially prejudice him in the eyes of the jury. *Sanders v. State*, 230 Ga. App. 176, 177 (3) (495 SE2d 653) (1998). In analyzing whether this error was harmless

beyond a reasonable doubt, we must note that the prosecutor deliberately and repeatedly placed Maynard's silence before the jury; it was not inadvertent. Further, the prosecutor first raised the issue with the police officer and then followed up in his cross-examination of Maynard. Because the prosecutor's closing argument was not transcribed, we cannot know to what extent or how this matter was placed before the jury, if it was at all, but the transcript shows that Maynard did move for a mistrial when the prosecutor referred to this matter in his opening statement.

We note that Maynard testified and denied having sexual relations with the victim, and numerous witnesses testified for the defense. Moreover, the victim gave conflicting testimony about the alleged sexual acts.

Considering all the circumstances of this case, we cannot find that the error in allowing the prosecution to repeatedly cross-examine Maynard about his silence was harmless beyond a reasonable doubt and, therefore, must reverse Maynard's conviction.

3. Maynard also contends the trial court erred by allowing testimony about his sexual misconduct 20 years earlier. The prosecution introduced evidence that when Maynard was around twelve years old he initiated sexual contact with one male cousin who was approximately nine or ten and attempted sexual contact with another male cousin who at the time was six or eight years old. The sexual contact was oral sodomy and anal intercourse. At trial, Maynard contended the acts were remote in time, pointed to his age at the time of the acts, and said that the evidence was offered only to prejudice the jury because the acts did not tend to prove the crimes charged.

At trial, the prosecution contended the similar transaction evidence was offered to show Maynard's "course of conduct, bent of mind, lustful disposition toward specifically acts charged in [the] indictment." The prosecutor argued the rule that evidence of sexual abuse of young children, regardless of gender or the types of acts committed is generally sufficient to permit testimony about these acts to be admitted in evidence. See *Oller v. State,* 187 Ga. App. 818, 820-821 (2) (371 SE2d 455) (1988). The rule is generally,

[i]n crimes involving sexual offenses, evidence of similar previous transactions is admissible to show the lustful disposition of the defendant and to corroborate the victim's testimony. There need only be evidence that the defendant was the perpetrator of both crimes and sufficient similarity or connection between the independent crime and the offenses charged.

(Citation and punctuation omitted.) *Hogan v. State*, 272 Ga. App. 19, 21 (1) (611 SE2d 689) (2005). "[E]ven where sexual offenses are involved, the evidence should not be admitted unless the prejudice it creates is outweighed by its relevancy." (Citations and punctuation omitted.) *Holmes v. State*, 216 Ga. App. 874, 875 (1) (456 SE2d 236) (1995).

The prosecution also argued that the acts were similar because they took place in the home with other people also in the home, Maynard was an authority figure who used his age and position to get his way, overt force was absent, and the acts involved were similar, i.e., oral sodomy and fondling. Maynard argued that the evidence was inadmissible because of the remoteness in time of the similar transactions and Maynard's age at the time of those acts. After finding that the acts were sufficiently similar, the trial court held that the similar transaction evidence was admissible to show "course of conduct, bent of mind, [and] lustful disposition," and that the remoteness issue was not significant.

The prosecution contends on appeal, however, that the evidence was admissible because there was sufficient similarity between the acts as they concerned sexual abuse of young children and because Maynard gained access to the victims by virtue of his position of authority over the victim in this case and because his cousins felt that he had authority over them.

The State also argues that the rules regarding the use of similar transaction evidence are construed most liberally in cases involving sexual offenses and that we should not disturb the trial court's decision to admit this evidence absent an abuse of discretion. *Shorter v. State*, 271 Ga. App. 528, 530 (2) (610 SE2d 162) (2005). Further, our Supreme Court has held that it is not the number of similarities between the acts, but whether the evidence is "substantially relevant for some purpose other than to show a probability that [Maynard] committed the crime on trial because he is a man of criminal character." (Citation and punctuation omitted.) *Maggard v. State*, 259 Ga. 291, 293 (2) (380 SE2d 259) (1989).

Maynard primarily argues that the passage of time is too great between the acts involving his cousins and those alleged in this case. He relies upon *Slakman v. State*, 272 Ga. 662 (533 SE2d 383) (2000). In *Slakman*, our Supreme Court held that "the passage of time is 'one of the more important factors to weigh in considering the admissibility.' " Id. at 669 (4) (a).

In *Tyson v. State*, 232 Ga. App. 732, 733 (1) (503 SE2d 640) (1998), this court held that

> [a]lthough in other sexual abuse cases this Court has allowed the admission of similar transaction evidence which

was more than 20 years removed from the present offenses, our review of those cases shows they involve either a continuous course of criminal conduct, often involving different generations of the same family, or situations in which the defendant has been incarcerated for some of the intervening time.

(Citation omitted.) See, e.g., *Delk v. State*, 274 Ga. App. 261, 262 (2) (619 SE2d 310) (2005), and the cases cited therein. We have also held that a "defendant's youth at the time of the similar transaction should be considered when deciding if the testimony should be admitted to show lustful disposition and inclination, i.e., bent of mind." *Stephens v. State*, 205 Ga. App. 403, 404 (1) (422 SE2d 275) (1992). Thus, we must necessarily consider whether a logical connection exists between those acts and these for which Maynard is on trial.

Here, however, the prosecution showed neither a pattern of continuous conduct, nor that Maynard was incarcerated for any part of the period. Additionally, we must note that Maynard was a child himself at the time of the events described by his cousins, but was an adult 20 years later at the time of the events in these charges, and the prosecution offered no evidence of any alleged sexual misconduct in the intervening years. Under the circumstances, the similar transaction evidence offered by the prosecution was not admissible. *Tyson v. State*, supra, 232 Ga. App. at 733 (1).

Therefore, because no logical connection existed between the acts testified to by Maynard's male cousins which occurred 20 years earlier and the crimes for which he was on trial, proof of the separate offense did not establish the offense for which Maynard was on trial. *Williams v. State*, 261 Ga. 640, 641 (2) (409 SE2d 649) (1991). Accordingly, the trial court also erred by admitting this evidence, and as this evidence "is highly and inherently prejudicial, irrelevant and inadmissible," *Hudson v. State*, 271 Ga. 477, 479 (2) (521 SE2d 810) (1999), we must reverse Maynard's conviction for this error also.

4. Finally, relying upon *Dixon v. State*, 278 Ga. 4, 7 (1) (d) (596 SE2d 147) (2004), Maynard contends the trial court erred by sentencing him for child molestation, based on having sexual intercourse with the victim, after the jury acquitted him of her statutory rape. This issue is moot because we have reversed Maynard's convictions.

*Judgment reversed and case remanded. Johnson, P. J., and Bernes, J., concur.*

DECIDED NOVEMBER 29, 2006.

*Christopher A. Townley*, for appellant.

*Herbert E. Franklin, Jr., District Attorney, Christopher A. Arnt, Assistant District Attorney*, for appellee.