**SECOND DIVISION**
**BARNES, P. J.,**
**ADAMS and MCFADDEN, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**December 21, 2012**

# In the Court of Appeals of Georgia

A12A1680. LOPEZ v. THE STATE.

ADAMS, Judge.

Raul Lopez was convicted by a jury of aggravated child molestation, two counts of rape and three counts of child molestation.[1] He filed a motion for new trial, as amended, which the trial court denied, and then the present appeal. Having considered his claims of error on appeal, we now affirm.

Construed to support the jury's verdict, as we must on appeal, the evidence presented at trial showed the following facts pertinent to the issues raised here:

The victim, who was almost nine years old at the time of trial, testified first. the victim testified that she was currently living with her mother's sister in Texas, but that

---

[1] The victim's mother was also charged with these crimes, but the trial court granted the mother's motion for directed verdict at trial.

she went to kindergarten and first grade in Georgia. She said she remembered talking to a school counselor and police about Lopez when she was in the first grade, but said she "forgot" what she had talked to them about. Upon further questioning, she said she remembered telling people that Lopez[2] "had done some things to [her]," but that "it was a lie because a girl told [her] to say that." She also said the girl, whose name she could not remember, did not love her family and that was why she told the victim to say the things she said about Lopez.

Cathy Koon, a counselor at B. B. Harris Elementary School in Gwinnett County, testified next. Koon said that she was conducting a "safety lesson" on good touches, bad touches and nasty touches to the victim's first grade class when the victim spontaneously raised her hand and volunteered that someone had touched her on her "butt" when she was on the school bus. Koon took the victim to her office, and the victim then disclosed that Lopez touched her on her "biscuit." Koon asked the victim to explain what she meant by her biscuit, and the victim said "down there" and put her hand on the front area of her "private part." Koon also asked the victim if anything else happened, and the victim said Lopez put his biscuit on her biscuit.

---

[2] Lopez was the boyfriend of the victim's mother, and she also referred to him as "dad."

Koon gave the victim a male doll and female doll and asked her to demonstrate what Lopez did to her; the victim "immediately took the boy doll, placed it on top of the girl doll and then proceeded to move the doll back and forth and say, uh, uh." The victim told Koon that Lopez's "biscuit" would not fit in her "biscuit" and that he put his hand over her mouth so she would not make any noise.

Koon then contacted the Gwinnett County Department of Family and Children Services. Babette Stephens, who at that time was a child protective services investigator with Gwinnett County DFACS, came to the school and spoke with the victim. Stephens said that the victim told her that Lopez would come into her room and they both would undress and get under the covers in bed and that he would rub his "biscuit" on her "biscuit." The victim also told her that her mother would be in the kitchen during this time.

Stephens then contacted the Gwinnett County Police Department Special Victims Unit, and Sergeant D L. Brewster and Officer Benny McCollough came to the school and did an initial interview with the victim. This interview, in which the victim described what Lopez did to her, was audio recorded and played for the jury at trial. Although the video was audio only, Sergeant Brewster explained to the jury that male and female "Barbie-type" dolls were used during the interview and the

3

victim used the dolls to demonstrate some of what she was saying, including pointing to the front groin area of both dolls to show where their biscuits were located. He also testified that the victim pointed to her chest to explain what her "chi-chis" were, and that the victim said that Lopez's penis looked similar to a pencil and was near his stomach.

Additionally, during the interview the victim told the officers that Lopez would take his pants off and her dress off and would place his biscuit on her biscuit. The officers asked the victim whether Lopez placed his biscuit on or in her biscuit and she said that he placed it in her biscuit. The victim also said that sometimes Lopez placed his biscuit in her "butt," and that he kissed her on her mouth and sometimes put his tongue on her tongue, that he kissed her on her "chi-chis" and that he would sometimes lick and kiss her biscuit.

The victim was then transported to Gwinnett County Sexual Assault Center (GSAC) and examined by Denise Proto, who was qualified as an expert in sexual assault examination. Proto said that, as was her custom, she began the examination by asking the victim why she was there, and the victim responded that Lopez had done something to her. Proto asked the victim to elaborate, and she told Proto that Lopez puts his "biscuit" in her "biscuit." She indicated to Proto that her biscuit

4

referred to her pubic area and said that Lopez's biscuit did not look like a biscuit and was brown, and that it hurt when Lopez put his biscuit on her biscuit. The victim also told Proto that Lopez grabbed her breasts, which she called her "chi-chis," and wiggled them and that they turned red because he wiggled them "hard," and that sometimes Lopez put his mouth on her biscuit.

Proto conducted her physical examination of the victim next, and noted that there was generalized redness around the victim's vagina. She said this redness was consistent with what the victim said Lopez did to her, but also said on cross-examination that the redness could also be attributable to benign causes such as poor hygiene.

Officer McCollough testified that a warrant was then obtained for Lopez's arrest, and that he was arrested at his home, which was in unincorporated Gwinnett County. However, McCollough said several days later he received a telephone call from the victim's mother, who told him the victim wanted to speak to him. He talked to the victim on the phone, and she told him she wanted to come to police headquarters so she could tell him she was sorry she had lied to him. The victim came to the station about three days later, and McCollough spoke to her in an interview room and taped that interview on a hidden camera. That recording, in which the

victim both recanted and affirmed her previous statements concerning the molestation, was then introduced and played for the jury.

In addition to recanting the allegations she made against Lopez to the police, the victim also sought out Koon and said she needed to apologize because she had lied and that it was really her three-year-old brother who had done those things to her. Likewise, Lopez introduced evidence that employees of the district attorney's office talked to the victim on the phone while she was living in Texas, and that conversation had also been recorded and was played for the jury. In that conversation, the victim said she lied to Koon and the police because a "girl told her to . . . ."

1. Lopez first argues that the testimony given by Koon, the police officers and Proto improperly bolstered the testimony of the victim. However, the testimony of these witnesses was presented after the victim testified she lied when she said that Lopez committed various sexual acts against her. Thus, the testimony of these witnesses contradicted rather than bolstered the victim's testimony, and was properly admitted over defense counsel's vigorous objection.[3] "[Our Supreme Court has] rejected the assertion that 'a prior inconsistent statement is admissible only if the

_____

[3] The transcript shows that the proper foundation was laid prior to the admission of these statements. See OCGA § 24-9-83.

6

witness denies making the prior statement, but not if [the witness] simply disputes the truth of the earlier statement. There is no such "denial" requirement under (OCGA § 24-9-83)." (Punctuation and citation omitted.) *Johnson v. State*, 289 Ga. 106, 108 (3) (709 SE2d 768) (2011). *Bryant v. State*, 288 Ga. 876, 885 (8) (a) (708 SE2d 362) (2011); *Wilson v. State*, 286 Ga. 141, 142 (2) (686 SE2d 104) (2009); *Warner v. State*, 281 Ga. 763, 766 (3) (642 SE2d 821) (2007). Further, as the State points out, this testimony was admissible under the Child Hearsay Statute as well. OCGA § 24-3-16. *Metts v. State*, 297 Ga. App 330, 337 (7) (677 SE2d 377) (2009). This enumeration is thus without merit.

2. Lopez also argues that the evidence was insufficient to prove venue in Gwinnett County. We disagree. Although it is true that in Georgia venue is a jurisdictional fact that must be proved beyond a reasonable doubt, it is likewise true that "[t]he state may establish venue by whatever means of proof are available to it, and it may use both direct and circumstantial evidence." *Barkley v. State*, 302 Ga. App. 437, 437-438 (691 SE2d 306) (2010). *Hargrave v. State*, 311 Ga. App. 852, 853 (1) (717 SE2d 485) (2011), quoting *Stegall v. State*, 308 Ga. App. 666, 666-667 (2) (708 SE2d 387) (2011).

7

In this case, several witnesses testified concerning where the crimes took place. First, although the victim, would have been six years old at that time, did not know which county she lived in when she lived in Georgia, she did recall that she lived with Lopez, her mother and her siblings and said she could not remember living in any other house except the house they lived in then. The victim also told several witnesses that the sexual abuse happened in a room where they would get into a bed and that during that time her mother would be in the kitchen.

Additionally, Koon testified that all students who attend the school the victim was attending at the time she made the disclosure were required to live in Gwinnett County. And the DFACS worker testified that she established that the victim lived with Lopez, her mother and her siblings, and that the home was located in Gwinett County. Further, Officer McCullough testified that Lopez was arrested at his home in unincorporated Gwinnett County;

Notwithstanding Lopez's attempt to parse the evidence, we find that, taken as a whole and construed to support the verdict, this and other evidence presented at trial was sufficient to establish venue in Gwinnett County beyond a reasonable doubt. *State v. Prescott*, 290 Ga. 528, 529-530 (722 SE2d 738) (2012); *Gaston v. State*, ___ Ga. App. ___ (2) (731 SE2d 79) (2012); *Boyd v. State*, 314 Ga. App. 883, 885 (2)

8

(726 SE2d 135) (2012); *Hargrave*, 311 Ga. App. at 854 (1); *Stegall v. State*, 308 Ga. App. 666, 666-667 (2) (708 SE2d 387) (2011).

3. Lopez also challenges the sufficiency of the evidence to convict him of rape. Pursuant to OCGA § 16-6-1 (a) (2), "[a] person commits the offense of rape when he has carnal knowledge of . . . [a] female who is less than ten years of age." And "[c]arnal knowledge in rape occurs when there is any penetration of the female sex organ by the male sex organ." OCGA § 16-6-1 (a). "Under the established rule in this State, the penetration . . . necessary to constitute rape . . . need only be slight; it is not necessary that the vagina shall be entered or the hymen ruptured, but an entering of the anterior of the organ, known as the vulva or labia, is sufficient." (Punctuation and citations omitted.) *Payne v. State*, 231 Ga. 755 (1) (204 SE2d 128) (1974). Although the victim in this case stated that Lopez placed his "biscuit," both *on* her "biscuit," and *in* her biscuit, when specifically questioned during the police interview she said that Lopez placed his biscuit *in* her biscuit. Further, she told Proto that Lopez "takes his biscuit and puts it in my biscuit" and stated there was pain associated with this act. And the sexual assault examination revealed redness surrounding the vagina, and Proto testified that this redness was consistent with what the victim said Lopez did

9

to her. We find this evidence, construed to support the jury's verdict, was sufficient to support Lopez's conviction for the offense of rape.

3. Lastly, Lopez argues that the evidence was insufficient to convict him of aggravated child molestation and child molestation because the victim recanted her statements. However, her prior inconsistent statements to these witnesses were properly admissible as substantive evidence of Lopez's guilt of the crimes charged, and it was for the jury to decide whether to believe the victim when she said she lied to these witnesses or whether to believe her original statements to them. *Gibbons v. State*, 248 Ga. 858 (286 SE2d 717) (1982); see *Cheek v. State*, 265 Ga. App. 15 (1) (593 SE2d 55) (2003). The jury obviously chose to believe the allegations of molestation and rape, and the evidence presented was sufficient to support their verdict.

*Judgment affirmed. Barnes, P. J., and McFadden, J., concur.*