**FIRST DIVISION**
**DOYLE, C. J.,**
**ANDREWS, P. J., and RAY, J.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**May 6, 2016**

# In the Court of Appeals of Georgia

A16A0315. PETERSON v. THE STATE.                    DO-011 C

DOYLE, Chief Judge.

In the second appearance of this case before this Court, Paul Clifford Peterson appeals his convictions of one count of aggravated child molestation[1] and five counts of child molestation.[2] In Peterson's initial appeal, we granted his motion to remand the case to the trial court for rehearing on an issue of ineffective assistance of trial counsel.[3] Following that hearing, the trial court denied the motion for new trial. In

---

[1] OCGA § 16-6-4 (c). Peterson was charged with an additional count of aggravated child molestation, but the State entered a nolle prosequi as to that charge after the victim testified that the acts supporting it occurred in Michigan.

[2] OCGA § 16-6-4 (a) (1).

[3] See *Peterson v. State*, Case No. A15A0244 (unreported order entered November 21, 2014).

this subsequent out-of-time appeal, Peterson argues that: (1) the trial court erred by admitting certain similar transaction evidence; (2) he was denied effective assistance of counsel when (a) trial counsel failed to move for a mistrial after certain witness testimony, and (b) trial counsel failed to recuse himself and his office after becoming elected as the District Attorney three years after Peterson's trial; and (3) the evidence was insufficient to support the verdict. For the reasons that follow, we affirm.

On appeal from a criminal conviction, the appellate court

view[s] the evidence in the light most favorable to the verdict[,] and an appellant no longer enjoys the presumption of innocence. [The appellate court] determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*,[4] and does not weigh the evidence or determine witness credibility. Any conflicts or inconsistencies in the evidence are for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, [the appellate court] must uphold the jury's verdict.[5]

So viewed, the evidence shows that when the victim was four years old, she and her ten-year-old sister, S. C., were sent to Michigan after their mother died to live

[4] 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

[5] (Citations omitted.) *Rankin v. State*, 278 Ga. 704, 705 (606 SE2d 269) (2004).

2

with Peterson, his wife, and their two children.[6] According to the victim, Peterson began molesting her soon after she moved in, and he instructed her not to tell anyone about their "secret."

In 2003, the victim and S. C. moved with the Petersons to Houston County, Georgia. When she was 14 years old, Peterson showed the victim a picture of a ring and told her that he would buy it for her if she "let [him] get something." Peterson then inserted his fingers and his penis into the victim's vagina, despite her request that he stop; he subsequently gave her the ring he promised her. On another occasion, Peterson instructed the victim to drink liquor, grabbed her breasts, and inserted his penis into her vagina. In a third incident, Peterson forced her to touch his penis, and in a separate incident, he came into her room while she was sleeping and licked her vagina, despite her protestations.

The victim disclosed the molestation to her boyfriend, several friends, S. C., and Peterson's wife, Kim. Soon thereafter, S. C. told Peterson's sister-in-law that Peterson had molested both the victim and S. C. Thereafter, the victim disclosed the molestation to a friend and her mother, Paulette Fulton, a registered nurse. When Fulton confronted Peterson, he admitted the molestation, stating that "it [was] a secret

_____

[6]Peterson is the girls' second cousin.

[he would] take to [his] grave." Peterson also repeatedly apologized to the victim, stating that he "never meant to hurt [her]." Fulton reported the abuse to the Department of Family and Children Services, and Peterson was subsequently arrested and charged.

During the trial and following a hearing, the State introduced similar transaction evidence from S. C., who testified that when she was 11 or 12 years old, Peterson pulled down her underwear and penetrated her vagina with his finger. S. C. also testified that when she was approximately 17 years old, she asked Peterson for money to go shopping, and he gave her $50 after she complied with his request that she lift her shirt and bra and show him her breasts.

At the conclusion of the trial, the jury found Peterson guilty of aggravated child molestation and five counts of child molestation. On March 12, 2009, trial counsel, Oliver Jack Browning,[7] filed a motion for new trial on Peterson's behalf. On March 31, 2010, another attorney filed an entry of appearance on Peterson's behalf, and on December 15, 2010, appellate counsel filed an entry of appearance.

---

[7] Browning was the Chief Assistant Public Defender for the Tallapoosa Judicial Circuit.

In 2014, Browning was elected the district attorney for the Tallapoosa Judicial Circuit, and he took office on January 2, 2013. Soon thereafter, Browning obtained from the Prosecuting Attorney's Council of Georgia ("the PAC") a "white paper" containing instructions on how to build an effective ethical screen to isolate attorneys from cases in which they have a conflict of interest. Pursuant to the white paper, Browning then caused a memorandum to be placed in each file in which he represented defendants in Haralson County, which memorandum directed that Browning was to have no contact with the file whatsoever, and he had placed on each such file a sticker with the word "CONFLICT" on it. Browning also hired Chuck Rooks, an experienced prosecutor, as deputy chief assistant district attorney to manage the Haralson County office.[8] The physical files of all conflict cases remained in the Haralson County office with Rooks, who had complete discretion as to the disposition of each. Browning also arranged, through a computer-based case management system managed by PAC through an independent consulting firm, to block his own computer access to all of the conflict cases.

On January 12, 2014, Peterson filed an amended motion for new trial, arguing in part that Browning was ineffective. The trial court denied the motion, and Peterson

---

[8] Rooks had no conflict with any of the cases in the Tallapoosa Judicial Circuit.

appealed. On September 23, 2014, Browning sent a letter to the Attorney General disqualifying his entire office from Peterson's case, citing *McLaughlin v. Payne*,[9] and the Attorney General appointed the Executive Director (or his designee) of the PAC to prosecute the case. Peterson then filed a motion for remand to allow him to raise a new claim of ineffective assistance of counsel based upon Browning's failure to disqualify his office prior to Peterson's motion for new trial, and on November 21, 2014, this Court granted the motion.

At the subsequent March 18, 2015 hearing, Browning testified that he took no further action in Peterson's case after filing the initial motion for new trial because he knew Peterson was going to raise an ineffective assistance claim. Shortly after the trial ended, Browning's office sent the physical file to newly-appointed appellate counsel, and he had no access to the file thereafter nor the opportunity to review it before testifying at the initial hearing. After the second hearing, the trial court denied the amended motion for new trial, and this appeal followed.

1. Peterson argues that the trial court erred by admitting similar transaction involving the victim's sister, S. C. We disagree.

---

[9] 295 Ga. 609 (761 SE2d 289) (2014).

In order to establish the admissibility of similar transaction evidence, the State is required to make three affirmative showings. "First, the [S]tate must identify a proper purpose for admitting the transaction; second, the [S]tate must show that the accused committed the separate offense; and third, the [S]tate must show a sufficient similarity between the independent offense and the crime charged so that proof of the former tends to prove the latter."[10] "It is within the discretion of the trial court whether to admit such evidence[,] and we will not disturb that decision absent an abuse of discretion."[11]

> The exception to the general rule that evidence of other crimes is not admissible has been most liberally extended in the area of sexual offenses: In crimes involving sexual offenses, evidence of similar previous transactions is admissible to show the lustful disposition of the defendant and to corroborate the victim's testimony. There need only be

---

[10] *Houston v. State*, 270 Ga. App. 456, 458 (1) (606 SE2d 883) (2004). Because this case was tried before January 1, 2013, our new Evidence Code does not apply. See Ga. L.2011, pp. 99, 214, § 101. Nevertheless, "[w]e observe that, in general, the new Evidence Code eliminates bent of mind and course of conduct as permissible purposes for the admission of similar transaction evidence. But in criminal proceedings in which the defendant is accused of a sexual assault or child molestation, the new Code includes provisions for the admission of certain prior sexual assaults or child-molestation offenses for bearing on any matters to which they are relevant." *Arbegast v. State*, 332 Ga. App. 414, 417 (2) (a) (773 SE2d 283) (2015) (citation and punctuation omitted). See also OCGA §§ 24-4-413; 24-4-414.

[11] *Leaptrot v. State*, 272 Ga. App. 587, 596 (3) (612 SE2d 887) (2005).

evidence that the defendant was the perpetrator of both crimes and sufficient similarity or connection between the independent crime and the offenses charged.[12]

Given the similarity and connection between the similar transaction evidence and the offenses at issue here, the similar transaction evidence involving Peterson's digital penetration of S. C., as well as him giving her money in exchange for her exposing her breasts, was admissible to show Peterson's lustful disposition toward minors and to corroborate the victim's testimony.[13]

2. Peterson further argues that (a) trial counsel was ineffective by failing to move for a mistrial following certain testimony of Fulton, the nurse who reported Peterson's molestation of the victim, and (b) he was denied effective assistance of counsel when Browning, his former attorney, failed to recuse himself and his entire office from the case after he became the district attorney.

To succeed on an ineffective assistance claim, a criminal defendant must demonstrate both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance.

---

[12] (Punctuation omitted.) Id., quoting *Hogan v. State*, 272 Ga. App. 19, 21 (1) (611 SE2d 689) (2005).

[13] See *Hilliard v. State*, 298 Ga. App. 473, 476-477 (3) (680 SE2d 541) (2009).

There is a strong presumption that the performance of trial counsel falls within the wide range of reasonable professional assistance. The reasonableness of the conduct is viewed at the time of trial and under the circumstances of the case. If an appellant fails to meet his burden of proving either prong of the *Strickland* [*v. Washington*[14]] test, the reviewing court need not examine the other prong. In reviewing the trial court's decision, we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.[15]

(a) Peterson contends that trial counsel was ineffective by failing to contemporaneously move for a mistrial after Fulton gave improper opinion testimony regarding the ultimate issue in the case. This enumeration presents no basis for reversal.

The first time Fulton stated that Peterson "sexually abused" and "molest[ed]" the victim, trial counsel immediately objected, and the trial court sustained the objection and instructed the jury to disregard her comment. Shortly thereafter, Fulton again testified that Peterson "had molested [the victim]," and before trial counsel could object, the court immediately interjected and instructed her to answer only the

---

[14] 466 U. S. 668 (104 SCt 2052, 80 LEd2d 674) (1984).

[15] (Citations and punctuation omitted.) *Young v. State*, 327 Ga. App. 852, 857 (5) (761 SE2d 801) (2014).

9

questions posed. A few minutes later, Fulton testified that when she confronted Peterson, she told him that she knew that "it has been going on since [the victim] was four years old." At the conclusion of Fulton's testimony, trial counsel made a motion for mistrial, which the trial court denied.

At the hearing on Peterson's motion for new trial, trial counsel testified that he did not make a motion for mistrial at the time Fulton made the statements because he thought "it would probably be best to wait till the conclusion of her testimony to see what else came out of her mouth, with the idea that probably the accumulative [sic] effect of her testimony would be a basis for granting a mistrial." Trial counsel also explained that he made the strategic decision to point out during closing argument that Fulton "had a little bit of an axe to grind," believing that the jury might find her lacking credibility and that "maybe [she] wasn't hurting [Peterson's] case at all."

"Trial strategies do not equate to ineffective assistance merely because appellate counsel would have pursued a different strategy[, and n]o evidence has been presented to indicate that the failure to [earlier] move for a mistrial was an unreasonable strategy in this case."[16]

---

[16] (Citation and punctuation omitted.) *Pearce v. State*, 300 Ga. App. 777, 786 (7) (a) (686 SE2d 392) (2009).

10

(b) Peterson further contends that "he received ineffective assistan[ce] of counsel when his former attorney, [Browning], failed to recuse himself and his office from the case [after becoming the district attorney]." We find no basis for reversal.

Peterson relies upon *McLaughlin v. Payne*,[17] which was decided after Browning took office and after he testified at the initial motion for new trial hearing. In that case, the Supreme Court of Georgia held that when an "elected district attorney is wholly disqualified from a case, the assistant district attorneys – whose only power to prosecute a case is derived from the constitutional authority of the district attorney who appointed them – have no authority to proceed," and pursuant to OCGA § 15-18-5, the district attorney is required to notify the Attorney General's office of the disqualification, and the Attorney General is required to appoint or designate a prosecuting attorney to act in the place of the district attorney.[18]

Here, Peterson contends that Browning's failure to recuse himself and his entire office pursuant to *McLaughlin* constituted ineffective assistance of counsel

---

[17] 295 Ga. 609 (761 SE2d 289) (2014).

[18] Id. at 613.

entitling him to a new trial.[19] But as Peterson concedes, Browning was no longer advocating as defense counsel at the time he testified at the initial motion for new trial; subsequent counsel filed notices of appearance on Peterson's behalf shortly after the trial, which concluded three years before Browning took office; and Peterson was represented by such counsel at the hearing. Therefore, even assuming that Browning had an obligation to recuse himself and his entire office, his failure to do so did not constitute ineffective assistance of counsel because he was not acting as Peterson's attorney at the time.[20]

3. Finally, Peterson challenges the sufficiency of the evidence. Having reviewed the evidence, including the testimony of the victim, we conclude that the evidence was sufficient to support the convictions, notwithstanding the victim's

---

[19] Peterson does not argue that subsequent counsel was ineffective for not challenging Browning's failure to recuse himself and his office before the hearing.

[20] We note again that *McLaughlin* had not yet been issued when Browning took office or when he testified at the initial hearing, and he did recuse himself and his office shortly after the opinion was issued. And as Peterson concedes on appeal, "he cannot show that Browning had an actual conflict of interest or that an actual attorney-client confidence was violated."

initial recantation at Peterson's insistence.[21] "It is for the jury and not this Court to resolve conflicts and to assess witness credibility."[22]

*Judgment affirmed. Andrews, P. J. and Ray, J., concur.*

---

[21] See *Cheek v. State*, 265 Ga. App. 15, 16-17 (1) (593 SE2d 55) (2003). See also OCGA § 16-6-4 (a), (c) (1).

[22] (Punctuation omitted.) *Cheek*, 265 Ga. at 16 (1).